[No. F051447. Fifth Dist. Oct. 2, 2007.]

AIMEE NICHOLS, Plaintiff and Respondent, v.
CITY OF TAFT, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IV.

**COUNSEL**

Liebert Cassidy Whitmore, Shelline K. Bennett and Desiree Reed-Francois for Defendant and Appellant.

Morrison & Foerster, Arturo J. Gonzalez, Eric A. Tate and Samantha P. Goodman for Plaintiff and Respondent.

## OPINION

KANE, J.—While employed as a dispatcher for the City of Taft Police Department, plaintiff Aimee Nichols was allegedly subjected to physical and verbal sexual harassment on the job. She filed suit alleging claims of intentional tort and violation of the California Fair Employment and Housing Act (FEHA).[1] On the eve of trial, the parties settled. It was agreed in the settlement that defendant, City of Taft, would pay plaintiff $175,000 plus an award of attorney fees in an amount to be determined by the trial court. At the motion to fix attorney fees, plaintiff presented evidence of the reasonableness of her attorneys' customary rates of compensation. Her attorneys were members of a large out-of-town law firm with offices in Los Angeles and San Francisco,[2] and their usual fees were considerably higher than would be charged in the local Kern County area. Defendant insisted that the fee award must be limited to the reasonable rate for comparable legal services in the local community. In an apparent compromise, the trial court applied local (Kern County) rates for purposes of reaching an initial lodestar figure, and then *enhanced* the lodestar by a multiplier of 1.33. When the math was done, plaintiff was awarded $471,374.24 in attorney fees. The court explained it was obligated to apply the multiplier based on its reading of this court's decision in *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359 [33 Cal.Rptr.3d 644] (*Horsford*). Defendant appeals, contending the trial court applied the incorrect legal standard or otherwise abused its discretion when it (1) mistakenly presupposed it was *required* to apply a fee multiplier in this case, and (2) improperly considered out-of-town counsel's higher rates as the basis for a fee multiplier without an adequate evidentiary showing. We agree, and will remand to allow the trial court to exercise its discretion whether or not to apply a multiplier based on consideration of all the appropriate factors.

## BACKGROUND FACTS

Plaintiff filed her complaint for damages on May 10, 2005. It alleged that during her employment for the City of Taft as a police dispatcher, she was subjected to a pattern of continuing sexual harassment that lasted for more than two years. The perpetrator, Officer Paulson, allegedly engaged in inappropriate and offensive touching of plaintiff on a regular basis, such as unwelcome hugging, kissing, and grabbing of her breasts and buttocks. He

---

[1] Government Code section 12900 et seq.

[2] The firm also has offices in other large metropolitan areas in the United States and abroad.

also made frequent lewd comments to her. Plaintiff repeatedly demanded that Paulson stop such conduct, but Paulson would not do so. Plaintiff reported the sexual harassment to her superiors, but no action was taken to stop Paulson's actions. The complaint alleges that as a result of the ongoing offensive conduct, plaintiff suffered severe emotional trauma and depression. In addition to various tort causes of action, plaintiff's lawsuit alleged sexual harassment, failure to prevent sexual harassment, and retaliation for reporting sexual harassment, in violation of FEHA.

Trial was scheduled to begin on April 3, 2006. After extensive discovery efforts and numerous pretrial motions, the parties reached a settlement on March 23, 2006. The settlement provided that defendant would pay plaintiff the sum of $175,000 plus reasonable attorney fees and costs "in an amount to be determined by the Court based upon a motion for attorneys fees and costs to be filed by plaintiff's counsel."

Plaintiff's motion for attorney fees was filed on July 17, 2006. Plaintiff was and is represented by Morrison & Foerster, a large law firm with offices in Los Angeles and in the Bay Area. The supporting declaration of Attorney Eric Tate summarized the nature of the legal services that were provided to plaintiff in this vigorously litigated case. The declaration also described the extensive experience, expertise and other relevant background information concerning the several attorneys who provided legal services for plaintiff in this case. The 2005 hourly rates of the particular Morrison & Foerster attorneys that worked on plaintiff's case were listed as follows: (1) Arturo Gonzalez (partner)—$550 per hour; (2) Eric Tate (partner)—$475 per hour; (3) Samantha Goodman (associate)—$415 per hour; (4) Erika Drous (associate)—$225 per hour; (5) Dara Tabesh (associate)—$275 per hour; and (6) Steven Tang (associate)—$275 per hour. Attached to the supporting declaration was a copy of time records reflecting the hours worked by attorneys and paralegals at Morrison & Foerster on behalf of plaintiff in connection with this lawsuit. Plaintiff's motion sought a total of $507,883.07 in fees, which was the total of each attorney's (or paralegal's) time spent on the case multiplied by his or her hourly rate.

In opposition to the motion, defendant presented declarations showing that the prevailing hourly rates for comparable attorney services in the local community, i.e., Kern County, would be *at most* $250 per hour for partners, and $160 per hour for associates. By plugging in these hourly rates, and

making comparable reductions in the rates for paralegal services, the opposition argued that "[p]laintiff's request should be reduced to $302,281.25, less any additional subtractions for excessive work performed." Moreover, defendant pointed out that plaintiff had failed to establish that local attorneys were unavailable pursuant to *Horsford*, and therefore it would be inappropriate to provide out-of-town counsel with their customary rates. Instead, according to defendant, reasonable rates prevailing in the local community would have to be applied.

Plaintiff's reply papers argued that it may have been impractical for plaintiff to retain local counsel to handle her case. The reply included a declaration of plaintiff stating that because Taft and Bakersfield were small towns and law enforcement had "close ties" with the legal community, she was "fearful that [she] would not get fair and adequate legal representation by attorneys in Kern County."

At the hearing of the motion, the trial court announced its tentative ruling to award attorney fees in the sum of $471,374.24 and then proceeded to explain how it arrived at that amount. Preliminarily, the court stated that plaintiff had failed to demonstrate, pursuant to *Horsford*, the impracticability of retaining local counsel to handle her case.[3] Therefore, the court did not directly apply the rates from the higher fee market, but used the local rate of $250 per hour. However, based on its reading of the remainder of the *Horsford* case addressing "multiplier[s]," the trial court decided it was necessary to enhance the local rates by applying a multiplier of 33 1/3 percent. Defense counsel objected that plaintiff had never requested a multiplier. In explaining its decision, the trial court specifically stated: "I'm still obligated, as I read the law, I would have to apply some kind of multiplier to the out-of-town lawyer that's in a higher fee market." Oral argument concluded on this issue with the judge stating he was "still of the opinion [he was] going to adopt the tentative."

The court's written order granting the motion was consistent with its oral ruling and pronouncements at the hearing. On the issue of need for out-of-town counsel, the written order hypothesized that "this is a case that a Kern County plaintiff's attorney may not have been willing or able to undertake given the commitment of resources required and risks involved." However, the court found it unnecessary for purposes of the fee motion to resolve the

---

[3] The court qualified its conclusion by noting that the question of whether plaintiff made an adequate showing under *Horsford* (that local counsel was unavailable) was a close call. The written order similarly observed that plaintiff did offer *some* evidence on the question of her alleged need to obtain counsel outside of Kern County. As explained hereafter, we conclude the trial court's pronouncement at the time of hearing, i.e., that plaintiff failed to make an adequate showing as a matter of law, was correct.

question of "whether a sufficient showing of need for non-local counsel was made," because "[a]n award of the fees requested either at the higher fee market rates or at the local hourly rates proffered by Taft, *i.e.*, $250 per hour, with a multiplier, would provide essentially the same result and best effectuate the purposes of FEHA in this matter." The court applied the local rate plus the multiplier, which resulted in a total of $472,132.99. The court then deducted $758.75 for press-related time entries, for a total fee award of $471,374.24.

Defendant's notice of appeal timely followed.

## DISCUSSION

### I.   *Standard of Review*

A trial court's exercise of discretion concerning an award of attorney fees will not be reversed unless there is a manifest abuse of discretion. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511].) " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong["]—meaning that it abused its discretion. [Citations.]' " (*Ibid.*, citing *Serrano v. Priest* (1977) 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*).) Accordingly, there is no question our review must be highly deferential to the views of the trial court. (*Children's Hospital & Medical Center v. Bonta* ́ (2002) 97 Cal.App.4th 740, 777, 782 [118 Cal.Rptr.2d 629].)

At the same time, discretion must not be exercised whimsically, and reversal is appropriate where there is no reasonable basis for the ruling or the trial court has applied "the wrong test" or standard in reaching its result. (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 634 [71 Cal.Rptr.2d 632].) " 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' " (*Horsford, supra,* 132 Cal.App.4th at p. 393, citing *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].) Thus, in attorney fee determinations such as this one, the exercise of the trial

court's discretion "must be based on a proper utilization of the lodestar adjustment method, both to determine the lodestar figure and to analyze the factors that might justify application of a multiplier." (*Flannery v. California Highway Patrol, supra,* at p. 647.)

## II. *Lodestar Enhancement Is Discretionary*

Defendant first contends that the trial court applied the wrong standard, and misconstrued *Horsford,* when it concluded that a multiplier was *mandatory.* We agree.

█ In determining a reasonable attorney fee award under fee-shifting statutes such as FEHA, a court begins by deciding "the reasonable hours spent" on the case and multiplying that number by "the hourly prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133 [104 Cal.Rptr.2d 377, 17 P.3d 735] (*Ketchum*).) The result is called the "lodestar" figure. (*Ibid.*) The court may then adjust the lodestar figure in light of a number of relevant factors that weigh in favor of augmentation or diminution. (*Serrano III, supra,* 20 Cal.3d at p. 49; *Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1171 [74 Cal.Rptr.2d 510].)

As summarized in *Ketchum, supra,* 24 Cal.4th 1122: "[T]he lodestar is the basic fee for comparable legal services in the community; it *may* be adjusted by the court based on factors, including . . . (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award. [Citation.] The purpose of such adjustment is to fix a fee at the fair market value for the particular action." (*Id.* at p. 1132, italics added.)[4] We have italicized the word "may" in the above quote to emphasize the point that application of a lodestar multiplier is *discretionary;* that is, it is based on the exercise of the court's discretion after consideration of the relevant factors in a particular case.

---

[4] In *Serrano III,* the Supreme Court listed relevant factors that may weigh in favor of increasing or decreasing the lodestar figure, including the following: "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers . . . ." (*Serrano III, supra,* 20 Cal.3d at p. 49.) The *Serrano III* list is not exclusive and a court may determine that other factors are relevant in a particular case. (See *Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 834 [112 Cal.Rptr.2d 284] ["no hard-and-fast rule limiting the factors that may justify an exercise of judicial discretion to increase or decrease a lodestar calculation"].)

■ Although the *Ketchum* court explained in detail why a fee enhancement is reasonable in contingent cases (*Ketchum, supra,* 24 Cal.4th at pp. 1132–1133), it also held that the decision remains a matter within the trial court's sound discretion: "Of course, the trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case . . . . In each case, the trial court should consider whether, and to what extent, the attorney and client have been able to mitigate the risk of nonpayment, e.g., because the client has agreed to pay some portion of the lodestar amount regardless of outcome. It should also consider the degree to which the relevant market compensates for contingency risk, extraordinary skill, or other factors under *Serrano III.* We emphasize that when determining the appropriate enhancement, a trial court should not consider these factors to the extent they are already encompassed within the lodestar." (*Id.* at p. 1138.)

We take it then as established principle that a trial court's decision whether to apply a multiplier is a discretionary one, as the Supreme Court's decision in *Ketchum* made clear. *Horsford* did not hold otherwise. Indeed, it expressly acknowledged that "the trial court has *discretion* to increase or decrease the ultimate award in order to . . . ensure a fair and just result . . . ." (*Horsford, supra,* 132 Cal.App.4th at p. 394, italics added, citing *Ketchum, supra,* 24 Cal.4th at p. 1133.) Of critical concern in *Horsford* was the fact that the trial court appeared to have disregarded the relevant factors applicable to the attorney fee analysis, including a failure "to consider the relevant factors for awarding an enhancement multiplier." (*Horsford, supra,* at p. 399.) In holding that the court's failure to consider important factors constituted an abuse of discretion, the decision in *Horsford* insisted that discretion be exercised based on actual evaluation of the relevant criteria, but it did not mandate the use of a multiplier. In any event, we are obliged to adopt the standard announced in *Ketchum* that a trial court "is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case." (*Ketchum, supra,* 24 Cal.4th at p. 1138.)

■ In the present case, it appears the trial court mistakenly believed that it was *required* to impose a lodestar multiplier. The court expressed at oral argument that it was "obligated" to apply a multiplier due to the fact that plaintiff's attorneys were from an out-of-town area where fees were higher. Although the written order did not repeat the same language of obligation, neither did it correct the misconception, and the record reflects an almost

exclusive focus on the out-of-town counsel circumstance.[5] Of course, in a proper case where a threshold showing has been made that obtaining local counsel was impracticable, a trial court should consider the need to hire more expensive out-of-town counsel as a factor in determining the base fee used in the lodestar figure or in evaluating whether to apply a lodestar enhancement. (*Horsford, supra,* 132 Cal.App.4th at pp. 398–399.) Here, however, no such threshold showing was made, as we discuss hereafter. Moreover, as we have emphasized, the trial court's decision to apply a multiplier remains a *discretionary* one based on consideration of all the relevant factors in a particular case (*Ketchum, supra,* 24 Cal.4th at p. 1138), even when it has been demonstrated that hiring out-of-town counsel was necessary.

On the record before us, we conclude the trial court's mistaken understanding that a multiplier was required inevitably short-circuited the process of evaluating all the relevant factors that may have militated in favor of augmentation or diminution of the lodestar. Any meaningful consideration of relevant factors was cut off due to the court's misconception, and thus there was a failure to exercise its proper discretion. To put it another way, the court applied the wrong standard and thereby abused its discretion. (See *Flannery v. California Highway Patrol, supra,* 61 Cal.App.4th at pp. 634, 647.) We cannot say how the court would have ruled had it not believed it was obligated to apply a multiplier. Accordingly, we will reverse the attorney fee order and remand to allow the trial court to exercise its sound discretion to impose a multiplier (or not) based upon a consideration of all the relevant factors (see fn. 4, *ante*).

### III. *Consideration of Rates for Out-of-town Counsel Requires Threshold Showing*

Defendant also contends the trial court erred when it used a multiplier enhancement to compensate for out-of-town counsel's higher fee rate, because no threshold showing was made that it was impracticable for plaintiff to hire local counsel. We agree.

The objective starting point in the attorney fee analysis is the lodestar figure. (*Ketchum, supra,* 24 Cal.4th at pp. 1131–1132.) The lodestar figure is calculated using the reasonable rate for comparable legal services in *the local community* for noncontingent litigation of the same type, multiplied by the

---

[5] Although findings were not required, we note that only the most cursory mention was made of any other factors, and it is clear to us from the record that the trial court actually based its decision on the fact that plaintiff's nonlocal counsel were from a higher fee market.

reasonable number of hours spent on the case. (*Id.* at pp. 1132–1133; see *PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1095 ["[t]he reasonable hourly rate is that prevailing in the community for similar work"].) Thus, a court's use of reasonable rates in the local community, as an integral part of the initial lodestar equation, is one of the means of providing some objectivity to the process of determining reasonable attorney fees. Such objectivity is " ' "vital to the prestige of the bar and the courts." ' " (*Ketchum, supra*, at p. 1132, citing *Serrano III, supra*, 20 Cal.3d at p. 48, fn. 23.)

However, as pointed out in *Horsford*, the Supreme Court "has never hinted that, in the unusual circumstance that local counsel is unavailable, the trial court is limited to the use of local hourly rates." (*Horsford, supra*, 132 Cal.App.4th at p. 399.) In that case, the plaintiff submitted a declaration showing extensive efforts to find local counsel that were wholly unsuccessful. Other declarations revealed that many local firms did not want to go against the defendant, a local university, due to the popularity of the university and its athletic teams. (*Id.* at p. 398.) We found this was sufficient to demonstrate the need to hire out-of-town counsel: "If a potential defendant is too intimidating to the local bar or so replete with resources as to potentially overwhelm local counsel, or if the local plaintiffs' bar has not the resources to engage in complex litigation on a contingency-fee basis, the public interest in the prosecution of meritorious civil rights cases requires that the financial incentives be adjusted to attract attorneys who are sufficient to the cause." (*Id.* at p. 399.)

*Horsford* concluded that because the plaintiff showed " 'a good-faith effort to find local counsel' " and "demonstrate[d] . . . that hiring local counsel was impracticable," the trial court should have considered the out-of-town counsel's higher rates, either in (1) calculating the initial lodestar figure *or* (2) evaluating whether to award a multiplier to a lodestar initially calculated using local hourly rates. (*Horsford, supra*, 132 Cal.App.4th at p. 399.) The particular "method of achieving adequate compensation for out-of-town counsel, *when reasonably necessary*, rests within the trial court's discretion." (*Id.* at p. 399, italics added.)

In the present case, the trial court concluded at oral argument that, unlike the plaintiffs in *Horsford*, plaintiff had failed to make a "sufficient demonstration of impracticality of not being able to obtain a local attorney." The trial court further stated that "[s]ince [plaintiff] had not . . . in [plaintiff's] moving declaration, said that she made an application and tried to have a lawyer hired

here, [the court] was caught." In the written order, the trial court simply avoided the issue by asserting it was unnecessary to decide whether plaintiff's showing was sufficient because the court intended to apply a multiplier. We note it is clear from plaintiff's declaration that, although she had concerns that she would be unable to find adequate representation, no effort was made to retain local counsel. Despite the fact that plaintiff failed to make an adequate threshold showing, the trial court proceeded to impose a fee multiplier based on the out-of-town attorneys' higher rates.

We hold the trial court abused its discretion. Use of a fee multiplier to compensate for the higher rates of out-of-town counsel requires a sufficient showing—which plaintiff failed to make in this case—that hiring local counsel was impracticable. (See *Horsford, supra,* 132 Cal.App.4th at pp. 398–399.) Otherwise, the rule tethering the lodestar to local rates would be effectively bypassed, since a trial court could always account for out-of-town rates through the "backdoor" by means of a multiplier, even when there was no showing that local attorneys were unavailable. Additionally, as noted earlier, the trial court mistakenly believed that it was *required* to impose a multiplier whenever a FEHA plaintiff hires out-of-town counsel from a higher fee market. No such mandatory multiplier rule exists in the law, and we have already concluded that reversal is warranted on that ground alone. On remand, the trial court shall exercise its sound discretion to impose a multiplier (or not) based upon a consideration of the relevant lodestar adjustment factors in this case (see fn. 4, *ante*), but without consideration of the out-of-town attorneys' higher rates.

IV. *Other Attorney Fee Issues**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The attorney fee order is reversed and the matter is remanded to allow the trial court to properly exercise its discretion to determine whether it should impose a multiplier or not, and if so what the multiplier should be, based upon a consideration of the relevant lodestar adjustment factors in this case (see fn. 4, *ante*), but without consideration of the out-of-town attorneys' higher rates. On remand, the trial court shall also address the issue of whether

---

*See footnote, *ante*, page 1233.

it inadvertently miscalculated the attorney fee rate for associate Goodman, and if so, make the appropriate correction to the award. In all other respects, the judgment is affirmed.

Each party shall bear its own costs on appeal.

Harris, Acting P. J., and Hill, J., concurred.