Filed 2/7/14  Radwan v. Andaluz Bakery and Restaurant CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| AREEJ RADWAN et al., | |
| Plaintiffs and Respondents. | G047180 |
| v. | (Super. Ct. No. 30-2010-00339271) |
| ANDALUZ BAKERY AND RESTAURANT, INC., et al., | O P I N I O N |
| Defendants and Appellants, | |

Appeal from a postjudgment order of the Superior Court of Orange County, Sheila Fell, Judge.  Affirmed.

Law Offices of Edward A. Hoffman and Edward A. Hoffman for Defendants and Appellants.

Law Office of Mann & Elias, and Imad Y. Elias for Plaintiffs and Respondents.

\*      \*      \*

Plaintiffs Areej Radwan and Wiaam Abdulzahra filed suit against Andaluz Bakery and Restaurant, Inc. (the restaurant), and its owner, Ibrahim Al-Qawaqneh, claiming Al-Qawaqneh sexually harassed them while working as waitresses at the restaurant. Plaintiffs alleged causes of action for sex discrimination, sexual harassment, wrongful constructive termination, battery, and failure to pay wages. After a bench trial of less than eight hours, the court found Al-Qawaqneh sexually harassed plaintiffs and failed to pay all wages due. The court denied plaintiffs' claim for constructive discharge, however, finding plaintiffs quit their employment for reasons unrelated to the sexual harassment. The court awarded damages totaling $14,107. Neither party appealed the judgment on the merits.

Plaintiffs then moved to recover their attorney fees under Government Code section 12965, subdivision (b) and, over defendants' opposition, the court awarded $128,947.50 in fees.[1] Defendants appeal the fee award, claiming plaintiffs are not entitled to fees, or, alternatively, that the amount of fees are excessive. We affirm the order.

FACTS

Al-Qawaqneh owns the restaurant. The restaurant hired Radwan in 2008 and Abdulzahra in 2010 as waitresses. Both Radwan and Abdulzahra testified that their work began with training periods when they were not paid. This period was four days for Radwan and two weeks for Abdulzahra. After that, both earned $8 per hour plus tips. Radwan testified that they were expected to eat lunch while on duty and were

---

[1] The operative complaint also alleged an entitlement to attorney fees under Labor Code section 218.5 on the causes of action for unpaid wages. Although plaintiffs prevailed on these causes of action, their motion for attorney fees did not argue for an award under the Labor Code.

not given lunch breaks, and that Al-Qawaqneh deducted the cost of their meals from their pay.

Both plaintiffs testified that Al-Qawaqneh frequently engaged in conduct they considered harassment. Radwan testified that Al-Qawaqneh harassed her on nearly a daily basis; more times than she could count. On one occasion, he grabbed Radwan and started kissing her against her will. He sometimes touched her rear end and commented that it was "fatty," saying "I love chubby girls." Another time he placed his arm around Radwan's waist. Radwan asked him to stop, saying she was ticklish. Al-Qawaqneh then asked if being ticklish interfered with her sex life. When Radwan asked him to stop, he would say things like, "Don't take things so sensitive. Take it more simple than that."

Radwan testified that she felt humiliated and pressured by Al-Qawaqneh's conduct. She had trouble sleeping, and her relationship with her fiancé suffered. She became irritable and nervous, and, after leaving her employment at the restaurant, worried about losing custody of her daughter. She was hospitalized for stress in 2009, but did not see a therapist because she could not afford to.

Abdulzahra likewise testified that Al-Qawaqneh harassed her on nearly a daily basis. In the first incident of harassment, Al-Qawaqneh held Abdulzahra's hand and asked if she was engaged. She told him to release her hand and that it was none of his business. On another occasion, Al-Qawaqneh grabbed Abdulzahra's cell phone from her hand to look at a picture of her in a swimming pool, and asked her if her breasts were fake, to which she replied it was none of his business. On yet another occasion, Al-Qawaqneh grabbed her breasts to see if they were real. She slapped his hand and yelled, "What the hell you are doing?" He simply smiled and replied, "Take it simply. I'm just wanted to find out whether this is fake or not." At

3

other times he would make comments such as, "Your breasts are big and I love big breasts."

Abdulzahra testified that she felt weakened and stressed on a daily basis at the workplace because of Al-Qawaqneh's harassment. She was nervous, but did not feel she needed a psychologist or therapist.

When these things happened, plaintiffs told Al-Qawaqneh to stop, which angered Al-Qawaqneh. He would also speak to them in a humiliating manner and make them do unpleasant work that was not part of their normal duties.

Radwan and Abdulzahra both left their employment in August of 2010. This happened after a fight at the restaurant when another female employee named Amal cursed at Abdulzahra and attacked her in the parking lot. Abdulzahra acknowledged that this fight was a "small part" of the reason she quit. Radwan testified that the fight, which apparently did not involve her other than breaking it up, had nothing to do with why she quit. She quit because of the harassment. A restaurant manager testified to the contrary, however, that both claimed to have quit because of the fight. Plaintiffs returned to the restaurant a few days later for their final paycheck, but did not receive it.

Plaintiffs filed suit alleging 10 causes of action: (1) sex discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), (2) sexual harassment in violation of FEHA, (3) retaliation in violation of FEHA, (4) wrongful constructive termination in violation of public policy, (5) battery, (6) sexual battery, (7) intentional infliction of emotional distress, (8) failure to pay wages (Abdulzahra), (9) failure to pay wages (Radwan), and (10) conversion. The matter was initially set for a jury trial, but was continued due to plaintiffs' counsel being ill. Thereafter, the matter proceeded as a bench trial.

4

After a three day bench trial (which totaled less than 8 combined hours of court time), the court entered judgment in plaintiffs' favor. The court awarded $2,920 to Radwan in unpaid wages, $1,187 to Abdulzahra in unpaid wages, and $5,000 to each for emotional distress caused by the sexual harassment. The court found, however, that neither plaintiff was constructively terminated. "Plaintiffs each testified that the cause of Plaintiffs leaving Andaluz was because of a clash with another employee rather than any doing of [Al-Qawaqneh]."[2] Accordingly, the court awarded no damages for loss of future earnings.

Plaintiffs moved for an award of attorney fees, seeking a lodestar amount of $128,947.50, with a multiplier of two for a total award of $257,895. Plaintiffs' lead counsel, Imad Elias, submitted a declaration attesting that his hourly rate was $450 per hour, a rate at or below the market rate in the "Los Angeles Area," which he defined as Los Angeles County and "surrounding counties." He also attached time records documenting the hours he spent on the case. An associate of his, for whom he charged $225 per hour, likewise submitted a declaration with time records. Plaintiffs also submitted the declaration of David M. deRubertis, an employment-law attorney based in Los Angeles County. DeRubertis testified that he was familiar with rates typically charged in Southern California, including Orange County, and that $450 per hour was reasonable.

Defendants opposed the motion on several grounds. First, defendants argued the matter should have been brought in limited civil jurisdiction, and that under Code of Civil Procedure section 1033, subdivision (a), and following *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, the court should deny attorney fees altogether. Second, defendants claimed the fee motion was untimely. Third, defendants argued

---

[2] This appears to be a misreading of the testimony. Neither plaintiff testified they quit because of the fight. Plaintiffs did not appeal the judgment, however, and it is now final.

5

plaintiffs' fee award should be no more than one-third of the damages awarded. Fourth, defendants claimed approximately 140 hours of work were "either not in accordance with the law . . . or greatly exaggerated." Defendants did not submit any evidence in connection with their opposition.

The court granted the full lodestar, without the multiplier, stating, "I thought they justified the hours."

DISCUSSION

*Substantial Evidence Supports the Attorney Fees Award*

Defendants' principal contention on appeal is that the attorney fees award is not supported by substantial evidence because none of the declarations in support of the fee motion provided evidence of the prevailing rate *in Orange County*, as opposed to Los Angeles or elsewhere. We disagree.

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) "The reasonable hourly rate is that prevailing *in the community* for similar work." (*Ibid.*, italics added.) "Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*Ibid.*)

Courts of appeal have expanded on the notion that the hourly rate to be awarded must be that prevailing in the community. In *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, employees of California State University of Fresno prevailed in an action alleging various employment causes of action, including racial discrimination, and moved for their attorney fees. (*Id*. at p. 372.) Though the matter was tried in Fresno County, plaintiffs' lead counsel was from San Francisco, where typical hourly rates are higher. (*Id.* at pp. 397-398.) The trial court

6

believed it could only award the prevailing hourly rate in the local community, and thus refused to award lead counsel's higher rate, which was typical of San Francisco. (*Ibid.*) The Court of Appeal reversed, finding plaintiff had made a strong evidentiary showing that hiring local counsel was impractical. "The purpose of statutory attorney fee provisions is to provide financial incentives necessary for the private enforcement of important civil rights. [Citation.] If a potential defendant is too intimidating to the local bar or so replete with resources as to potentially overwhelm local counsel, or if the local plaintiffs' bar has not the resources to engage in complex litigation on a contingency-fee basis, the public interest in the prosecution of meritorious civil rights cases requires that the financial incentives be adjusted to attract attorneys who are sufficient to the cause. In the absence of any realistic indication plaintiffs could have found local counsel, it was an abuse of discretion to fail even to consider an hourly rate based on counsel's 'home' market rate." (*Id.* at p. 399.)

In *Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, plaintiff brought a sexual harassment suit in Kern County, which settled for $175,000. Plaintiff was represented by Morrison & Foerster, a large law firm with offices in Los Angeles and in the Bay Area. (*Id.* at pp. 1236-1237.) Plaintiff sought $507,883.07 in fees for work performed by six attorneys at rates ranging from $225 to $550 per hour (which were their 2005 rates). (*Id.* at p. 1237.) In opposition, defendants presented evidence that the prevailing rates in Kern County for similar work were, at most, $250 per hour for partners and $160 per hour for associates. (*Ibid.*) The trial court granted nearly the entire amount plaintiff sought, but the Court of Appeal reversed. It held there was no evidence plaintiff made a good faith effort to hire local counsel before turning to out-of-town counsel, and thus the local rate must prevail. (*Id.* at pp. 1243-1244.)

Here, defendants contend plaintiffs presented no substantial evidence of the prevailing rate *in Orange County*, and thus the proper award should have been zero. We disagree for two reasons.

7

First, defendants misread the record. The Elias declaration specifically opined that his rate of $450 per hour was at or below the prevailing rate in the "Los Angeles Area," which he defined to include Los Angeles County *and* surrounding counties. Orange County adjoins Los Angeles County. Also, deRubertis declared he was familiar with the prevailing rates in Orange County and that $450 per hour was reasonable. Defendants criticize the deRubertis declaration on the ground that it never specifically said $450 is the prevailing rate in Orange County, only that it is reasonable. But that is an overly cramped reading of the declaration. While perhaps not ideally worded, the clear gist of the declaration is that $450 is a reasonable rate in Orange County. Thus there was substantial evidence of the prevailing rate in Orange County.

Second, defendants misread the case law. Defendants would have us erect a procedural trap for unwary attorneys who fail to opine on the prevailing rate in the *county*. But the touchstone is the prevailing rate in the *community*. The community does not necessarily stop at the county line. In *Nichols v. City of Taft*, *supra*, 155 Cal.App.4th 1233, the *defendants* put on evidence that the prevailing rate in Kern County was below that sought by lawyers from Los Angeles and the Bay Area. (*Id*. at p. 1237.) Here, defendants did not even raise the issue below, much less put on evidence that the prevailing rate in Orange County differs significantly from Los Angeles County. And given the close proximity and economic affluence of both counties, it is not clear to us that there is a significant difference. Thus the evidence plaintiffs presented adequately substantiated the prevailing rate in the community.

*The Trial Court Did Not Abuse Its Discretion in Awarding Fees Despite the Damage Award Being Less than the Jurisdictional Minimum for an Unlimited Civil Case*

Defendants claim the trial court abused its discretion under Code of Civil Procedure section 1033, subdivision (a), which states, "Costs or any portion of claimed costs shall be as determined by the court in its discretion in a case other than a limited

8

civil case in accordance with [Code of Civil Procedure] Section 1034 where the prevailing party recovers a judgment that could have been rendered in a limited civil case." Code of Civil Procedure section 1033, subdivision (a), "interpreted according to its plain meaning, gives a trial court discretion to deny attorney fees to a plaintiff who prevails on a FEHA claim but recovers an amount that could have been recovered in a limited civil case. In exercising that discretion, however, the trial court must give due consideration to the policies and objectives of the FEHA in general and of its attorney fee provision in particular." (*Chavez v. City of Los Angeles*, *supra*, 47 Cal.4th at p. 976.) "In making this evaluation, the trial court should exercise caution to avoid 'hindsight bias,' which is the recognized tendency for individuals to overestimate or exaggerate the predictability of events after they have occurred. [Citations.] If, based on the available information, the plaintiff's attorney might reasonably have expected to be able to present substantial evidence supporting a FEHA damages award in an amount exceeding the damages limit (now $25,000) for a limited civil case, or if the plaintiff's attorney might reasonably have concluded that the action could not be fairly and effectively litigated as a limited civil case, the trial court should not deny attorney fees merely because, for example, the trier of fact ultimately rejected the testimony of the plaintiff's witnesses or failed to draw inferences that were reasonably supported, although not compelled, by the plaintiff's evidence." (*Id.* at pp. 986-987.)

In their opening brief, defendants contend, "Much of respondents' claim was for lost future earnings after they were supposedly forced to quit. [Citation.] In closing arguments, their counsel sought $250,000 for each of them on this part of their claims.[3] [Citation.] But the trial court correctly found that they quit because of conflicts with another employee, not because of harassment. [Ciation.] They could not have

---

3 The $250,000 figure is a misreading of the record. Plaintiffs each sought $250,000 in emotional distress damages. They later supplemented their closing argument by requesting approximately $80,000 in combined lost earnings

9

reasonably expected consequential damages for a constructive termination that never happened." But plaintiffs claim it did happen. And though the trial court found otherwise, we are not to engage in hindsight bias. Plaintiffs' own claim that they left due to Al-Qawaqneh's harassment, with the attendant loss of post-termination earnings, provided their counsel with a reasonable basis to file in a court of unlimited civil jurisdiction. The mere fact that the court found against plaintiffs on the constructive termination claim is no basis for us to find the court abused its discretion in awarding fees.

Further, plaintiffs sought emotional distress damages for the sexual harassment that did in fact occur. While the court awarded only $5,000 to each plaintiff, such awards are inherently unpredictable and could easily have exceeded the $25,000 limit. Indeed, in their fee motion, plaintiffs presented evidence that the median award in a sexual harassment case in Orange County from 2007 through 2011 was $177,106. Defendants criticize this evidence, claiming plaintiffs "offered no evidence that those other cases were similar to this one." But plaintiffs do not need iron clad proof that they are entitled to a large award for emotional distress damages; they only need a reasonable basis for believing they could receive such an award. "The trial court was familiar with all of the trial proceedings and with the evidence presented at trial. It was therefore in a much better position than this court . . . to determine whether this action could fairly and effectively have been litigated as a limited civil case and also whether [plaintiffs'] attorney should have realized, well before the action proceeded to trial, that [plaintiffs'] injury was too slight to support a damage recovery in excess of $25,000. We have no reason to question the trial court's implied determinations on these points." (*Chavez v. City of Los Angeles*, *supra*, 47 Cal.4th at p. 991.)

10

*The Trial Court Did Not Abuse Its Discretion in the Number of Hours Awarded*

Defendants contend the court abused its discretion in awarding all of the hours plaintiffs claimed and request that we reduce the award. In particular, defendants claim plaintiffs' trial preparation time — which totaled 136 hours — was excessive. They note that the trial lasted less than eight hours total. There were eight witnesses and eight exhibits. There were four motions in limine. There were no other pretrial or posttrial motions (except the attorney fees motion). And defendants asserted no affirmative defenses.

Plaintiffs' counsel submitted verified time records. 72 hours of the trial preparation is reflected in a single block-billed entry, spanning one week, at a time when a jury trial was contemplated. The entry reads: "TRIAL preparation. Includes: Review and analyze all deposition testimonies [of which there were five], discovery responses, review and analyses of records, time cards, clients written communication; Review relevant law; prepare direct examinations, cross examinations, voir dire questions, opening statement, closing argument; prepare trial notebook." Counsel spent another 20 hours the following week as follows: "Review trial notebook. Final trial preparation (re-review MILs): t/c clients re: trial testimony." The trial was then continued for approximately two months. Prior to the new trial date, there are entries for 10 hours to prepare a trial brief, 10 hours to review the trial notebook and general trial preparation, and three hours of meeting with plaintiffs to go over testimony. During the trial, counsel recorded an additional 21 hours of "Trial (and preparation during trial)."

At the hearing on the fee motion, in response to defendants' argument that plaintiffs' counsel's hours were excessive, the trial court commented, "I thought they justified the hours."

The standard of review is highly deferential. "The 'experienced trial judge is the best judge of the value of professional services rendered in [her] court, and while [her] judgment is of course subject to review, it will not be disturbed unless the

11

appellate court is convinced that it is clearly wrong.'" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49; see also *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 581 ["the awarding of attorney fees and the calculation of attorney fee enhancements are highly fact-specific matters best left to the discretion of the trial court"].) "The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." (*Akins v. Enterprise Rent–A–Car Co.* (2000) 79 Cal.App.4th 1127, 1134.)

Defendants' simple and straightforward argument is that the number of hours here is, in their words, "absurd." We disagree. While the hours are on the high side, given the simplicity and short duration of the trial, they do not shock our conscience, nor was the court clearly wrong in awarding such fees.[4]

*Defendants Forfeited the Argument that the Court Should Have Apportioned Fees Between Successful and Unsuccessful Causes of Action*

Finally, defendants contend the court failed to apportion plaintiffs' legal fees between successful and unsuccessful causes of action. (See *Environmental Protection Information Center v. Department. of Forestry and Fire Protection* (2010) 190 Cal.App.4th 217, 238-239.) The failure, however, was defendants. They failed to raise the issue below. Whether to reduce a fee award to account for unsuccessful claims is left to the trial court's discretion. (*Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 274 ["Rather than adopt a rigid holding, we conceive it to be far more beneficial to leave it to the discretion of the trial court to determine whether time spent on an unsuccessful legal theory was reasonably incurred"].) Defendants' failure to raise the issue in the trial court forfeited it on appeal.

---

[4] Since we find no basis to reduce the award, we likewise find no basis to *eliminate* the award based on an allegedly inflated demand, as defendants contend.

12

## DISPOSITION

The postjudgment order of the court is affirmed.  Plaintiffs shall recover their costs and reasonable attorney fees on appeal.


IKOLA, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.