Filed 8/30/22  Sarkany v. West CA1/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| JENNIFER SARKANY et al.,<br><br>        Plaintiffs and Respondents,<br>v.<br>CHRISTIE WEST et al.,<br><br>        Defendants and Appellants. | A161728<br><br>(San Francisco County<br>Super. Ct. No. CGC-18-571355) |

Defendants Christie West and Timothy West challenge an order awarding statutory attorney fees of approximately $684,000 to plaintiffs after a jury trial in a residential landlord-tenant matter.  Because we can discern no reasonable basis for the amount of fees awarded by the trial court, we shall reverse and remand for further consideration.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *Underlying Litigation*

Tenants Jennifer Sarkany, Ramsey Abouremeleh, Sandra Fierro, and Nina Robin (plaintiffs) sued Christie West (Christie), who was their landlord, and her son Timothy West (Timothy), who was part owner of the property they rented.[1]  (*Sarkany v. West* (Aug. 30, 2022, A160573) [nonpub. opn.]

---

[1] Because the defendants have the same last name, we refer to them by their first names.  We intend no disrespect.

(*Sarkany I*).)  Plaintiffs had rented an apartment consisting of the top two floors of a single-family house in which Christie occupied an in-law apartment on the ground floor.  (*Ibid.*)  After a jury trial on plaintiffs' claims, judgment was entered for each plaintiff against each of the two defendants.  The judgments against Christie totaled $201,245.50, of which $75,000 was for punitive damages, and the judgments against Timothy totaled $67,550.  The judgments did not include the trebling of certain damages, or any attorney fees or costs, all of which were to be determined separately.  The trial court later granted Timothy's motion for new trial, and denied Christie's motion for new trial on the condition that plaintiffs consent to a remittitur of total punitive damages against her to $15,000, in view of the court's finding that the punitive damages award was excessive on account of Christie's "negative net income and limited net worth."[2]  Plaintiffs consented to the remittitur, so their total damages from Christie amounted to $141,245.50, before any trebling.[3]  In our opinion in *Sarkany I*, filed today, we affirm the judgment entered for plaintiffs and the trial court's rulings on defendants' new trial motions.

The trial court subsequently issued an order stating that plaintiffs' motion for fees pertaining to Christie was sufficiently collateral to the judgment against her and would not be stayed by her appeal of the judgment,

---

[2] On our own motion, we take judicial notice of the trial court's May 5, 2020 order on defendants' new trial motions, which the parties discuss in their briefs, but which is not included in the Clerk's Transcript.  (Evid. Code., §§ 452, subd. (d); 459, subd. (a).)

[3] In the order awarding attorney fees, the court also awarded costs and trebled certain damages as provided by sections 37.10B and 37.9 of the San Francisco Rent Stabilization and Arbitration Ordinance.  Taking into account the trebling of certain damages, which defendants do not challenge, damages against Christie amount to $381,802.50, exclusive of fees and costs.

but that because the court had granted a new trial to Timothy, the court would not entertain a motion for fees pertaining to him.

B. *Plaintiffs' Motion for Attorney Fees*

Plaintiffs filed a motion to recover reasonable attorney fees as the prevailing party against Christie in claims arising under Civil Code section 1942.4[4] and sections 37.10B and 37.9 of the San Francisco Rent Stabilization and Arbitration Ordinance. Plaintiffs sought $756,103.95 in fees and a 1.5 multiplier, for a total of $1,134,155.92.

Although counsel's billings amounted to $890,115.50, based on their hourly rates and hours they spent on the case, plaintiffs requested a lodestar of $756,103.95, which, they said, reflected a voluntary $50,000 reduction "to address any concerns that some of the fees are not recoverable" and an additional 10 percent reduction that was intended to reflect the court's order of a new trial for Timothy West. All told, the reductions amounted to $134,011.55. (The trial court characterized plaintiffs' requested lodestar as offering a $140,000 reduction.)

Plaintiffs did not explain how they decided that an initial "voluntary" reduction of $50,000 was appropriate, except to say that the reduction "represents a portion of the fees accrued for [p]laintiffs' dismissed causes of action." Nor did plaintiffs offer an explanation for their additional 10 percent reduction, beyond the following conclusory statement in a declaration: "This figure was arrived at by conservatively considering how much less time would have been spent had the claim against [Timothy] not been tried to the jury. Even had [Timothy] not been a party, [Timothy] would still have had to be deposed as the owner of the property and the bulk of the time would still

---

[4] Civil Code section 1942.4 prohibits a landlord from demanding rent under certain circumstances where there are substandard conditions.

3

have been consumed by presenting the case against [Christie]. All of the witnesses called at trial were relevant to the liability and damages of [Christie]. In addition, the same evidence would have been presented with minor changes at best. Therefore, Plaintiffs believe a 10% reduction is appropriate."

In opposing the fee motion, defendants argued that plaintiffs failed to apportion fees between Christie and Timothy despite being ordered to do so by the court, and that Christie lacked the ability to pay the requested award. Defendants also argued that plaintiffs should not recover fees arising from conduct for which their counsel had been sanctioned, or for fees "incurred in failed law and motion." Defendants objected to numerous billing entries on various grounds, including that the entries reflected "[b]lock billing" or represented fees attributable to claims against Timothy, fees for dismissed causes of action, and fees that were denied by the court in the course of law and motion practice. In support of their opposition, defendants filed the declaration of an attorney specializing in landlord-tenant matters who had no involvement in this case; that attorney opined that the requested fees should be reduced in this case by four-fifths, in part because of plaintiffs' counsel's "extreme wastefulness of everyone's time and budget."

At the hearing on the attorney fees motion, defendants' counsel explained why the $140,000 reduction was insufficient, and argued that "a reduction of 4/5ths is justified in this case . . . based on how this case was litigated." Counsel emphasized that "only reasonable attorneys' fees are recoverable under 37.10(b). And that is the theme of my . . . argument is that these were not reasonable. This should not have been the case of the century." He urged the court to consider the "proportionateness" of awarding $684,000 in attorney fees in light of the amount of the damages, even trebled,

4

here. Referring to multiple earlier sanctions awards against plaintiffs' counsel in the case, including one that arose from apparent intimidation of a witness in violation of Penal Code section 136.1, and resulted in reporting to the State Bar, defendants' counsel argued, "when you get sanctioned [$]15,000[5] but then you recover [$]650,000 in attorneys' fees, the clear message is success. The Court green-lights witness intimidation and scorched-earth litigation."

At the hearing on the attorney fees motion, the court started out by observing that "a matter that is highly contentious is not the same as a matter that is highly complex." The court found that the issues in this case were "not particularly complex," although they were "highly contentious." After plaintiffs' counsel described this trial as going on over a two-month period (a duration he said was unheard of), the court observed that this was a case that "should have settled."

The history of the attorney fee motion was no less contentious, and it apparently formed the basis for the court's statements at the beginning of the hearing that it found both sides in contempt under Code of Civil Procedure section 177.5 and would impose a $1,500 sanction for violating "this Court's direct order of July 13th to meet and confer in good faith to resolve issues pertaining to attorneys' fees, costs, treble damages motions."[6]

---

[5] It is not clear how counsel arrived at the $15,000 figure, which appears to be an approximation of total sanctions imposed; the figure was not challenged at the hearing.

[6] The court also announced that it would stay the order until December 18 to allow them to complete courses in professional responsibility. The order would be permanently stayed upon counsel providing proof that approved training had been completed.

5

Before turning to the merits of the attorney fee motion, the trial court was critical of plaintiffs' counsel's conduct. In the context of denying a sanctions motion made by plaintiffs' counsel, and addressing him directly, the court stated: "your motion for sanctions against defendants' counsel is denied. . . . [¶] Your failure to comply with the Court's direct order is equally contemptuous. You submit to the Court reams of paper containing lengthy declarations and, by my count, some 46 exhibits, much of which actually confirmed the threatening tone complained of by opposing counsel including the incendiary timing of your first order of business in the new trial to take Lawler Brannaman's deposition; this, after the Court's careful rulings in the first trial and after Judge Haines found you in contempt for your behavior during [Brannaman's] earlier deposition." The court then briefly described a sample of threatening emails sent by plaintiffs counsel to defendant's counsel, and summed up, saying, "I need to be clear. Sending an email is not evidence of good faith. A threatening tone is not evidence of good faith."

After the hearing, the trial court issued a written order awarding plaintiffs $684,282.50 in attorney fees. The court accepted as reasonable the requested hourly rates for two of plaintiffs' three attorneys and for plaintiffs' two paralegals, and reduced the requested hourly rate for one of plaintiffs' attorneys from $620 to $550. The court stated it had reviewed the billing records submitted by the plaintiffs and the pleadings of the parties, including defendants' itemized objections, and sustained all of defendants' objections to specific billings. The court acknowledged that plaintiffs' counsel "failed to honor his commitment to separately account for the time devoted to issues specific to [Timothy]," but concluded that the $140,000 reduction offered by plaintiffs was a "satisfactory substitute" for "non-compensable time devoted to issues specific to [Timothy] and other nonrecoverable time," including the

6

billings to which defendants had specifically objected.[7] The court declined defendants' request to further reduce the fees based on Christie's financial limitations, and declined to award plaintiffs a multiplier.

Defendants timely appealed.[8]

## DISCUSSION

A. *Standard of Review*

Here it is undisputed that the statutes at issue provide for attorney fees to the prevailing party. The amount of an attorney fee award "is a matter within the sound discretion of the trial court." (*Akins v. Enterprise Rent-A-Car Co. of San Francisco* (2000) 79 Cal.App.4th 1127, 1134.) Ordinarily, "[t]he trial court is the best judge of the value of professional services rendered in its court, and while its judgment is subject to our review, we will not disturb that determination unless we are convinced that it is clearly wrong." (*Ibid.*, citing *Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) Our review is deferential to the trial court, but "reversal is appropriate where there is no reasonable basis for the ruling." (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239.)

---

[7] The court applied the $140,000 reduction to its calculation of fees based on the hours requested by plaintiffs and the hourly rates that the court found reasonable. Accordingly, the reduction was taken from $824,282.50, as opposed to the $890,115.50 originally calculated by plaintiffs.

[8] With their reply brief on appeal, defendants filed a motion to augment the record with a trial court order that was filed on February 2, 2021, months after defendants noticed the appeal at issue here. Plaintiffs opposed the application; and we now deny it. "The augmentation procedure cannot be used to bring up matters occurring during the pendency of the appeal because those matters are outside the superior court record." (*In re K.M.* (2015) 242 Cal.App.4th 450, 456.) The February 2021 order is the subject of our opinion in *Sarkany v. West* (A162441, Aug. 31, 2022) [nonpub. opn.].)

B.    *Analysis*

Plaintiffs raise three arguments concerning the fees.[9]  We consider them in turn.

1.    *One Judgment Rule*

Defendants advance a conclusory argument that plaintiffs' motion for attorney fees as to Christie was "premature . . . in light of the one-judgment rule" and that the court should not have considered plaintiffs' fee motion. Defendants contend that Timothy and Christie were "joint tortfeasors," and therefore "only one judgment could be rendered against both [of them] and attorney[ ] fees should not have been awarded before that judgment was entered."  Defendants further contend, without offering any explanation or support, that if Timothy prevails at his new trial, the plaintiffs would no longer be entitled to fees they were awarded as to Christie, and that Timothy could recover those same fees from plaintiffs.

Rather than presenting reasoned argument on this issue, defendants' appellate brief points us to trial court briefs and identifies, but does not discuss, cases that were cited below.  Defendants have therefore forfeited the

---

[9] An appellant must "present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; otherwise, the point will be forfeited." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 666, citing Cal. Rules of Court, rule 8.204(a)(1)(B).)  Further, an appellant must "support claims of error with meaningful argument and citation to authority. [Citations.]  When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. . . . We are not required to examine undeveloped claims or to supply arguments for the litigants." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*).)  Accordingly, we disregard defendants' contentions that the attorney fee award should be reversed because the trial court erred by refusing to issue a statement of decision; and that the fee award should be reversed because plaintiffs failed to make a reasonable settlement offer.

argument.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20 ["incorporation by reference of documents filed in the trial court" is not permitted on appeal]; *Allen, supra*, 234 Cal.App.4th at p. 52 [citing cases without discussing their application to the present case results in forfeiture].)

  2. *Fees Not Reasonably Incurred for Claims Against Christie West*

  Without question, reasonable statutory attorney fees should be awarded to plaintiffs as the prevailing parties in their suit against Christie. Yet defendants argue persuasively that the fee award here is not reasonable. They argue that it is excessive, and that the trial court erred in making an arbitrary $140,000 reduction to the fee that resulted after the court reduced one attorney's hourly rate.

  We are hard pressed to understand how a $700,000 fee award to plaintiffs amounts to a "reasonable" attorney fee based on the record of this case as we understand it.  This was a dispute between an individual residential landlord and four tenants who occupied an apartment for nine months, in which tenants prevailed.  (See *Sarkany I* [plaintiffs signed leases that took effect February 1, 2018, and vacated their units at the end of October 2018].)  Both counsel agreed that the length of trial was unheard of. Leaving that aside, the record reflects multiple sanctions imposed upon plaintiffs' counsel.  In the three months before trial, plaintiffs were sanctioned for misuse of the discovery process; for opposing a motion for protective order where the court found that "on the virtual eve of trial" plaintiffs propounded "voluminous, cumulative, and overly burdensome" discovery requests as well as untimely requests for admission; and for what the court found to be intimidation of a witness by plaintiffs' counsel at a deposition, in violation of Penal Code section 136.1.  Further, in the order

9

awarding attorney fees itself, the trial court imposed *additional* sanctions against plaintiffs' counsel (as well as against defendants' counsel) for failure to meet and confer in good faith, in violation of the court's order. These sanctions orders indicate that plaintiffs' time entries in this case must be carefully scrutinized, particularly where discovery and law and motion are concerned. Plaintiffs' dismissal of three causes of action on the eve of trial, as discussed in *Sarkany I*, likewise calls for close examination of their fee request.

The record reflects that defendants objected in the trial court to numerous time entries in plaintiffs' billing records, and the trial court sustained all those objections. These objections addressed work related to plaintiffs' case against Timothy. But defendants also objected to time entries reflecting block billing; entries for duplicative work; entries associated with a failed motion for protective order made by plaintiffs; entries associated with law and motion matters for which fees had previously been denied; entries associated with the deposition that led to the imposition of sanctions on plaintiffs' counsel for witness intimidation and entries associated with the related sanctions motion; and entries reflecting unnecessary and inappropriate discovery, including discovery regarding a prior lawsuit that was dismissed and discovery related to what defendants describe as "frivolous character attacks from the neighbors."

Painting with a broad brush, plaintiffs stated that their proposed $140,000 reduction in fees covered "a portion" of the fees associated with dismissed causes of action, plus a reduction based on their own estimate (which was not bolstered by any analysis) that fees would have been ten percent less if Timothy had not been a party.

10

The trial court's $140,000 reduction in the requested fee is based on plaintiffs' largely unsupported view that a $140,000 reduction was appropriate to reflect dismissed causes of action and proceedings against Timothy. It does not appear to correlate to the billing entries and categories of fees that defendants specifically challenged, and that the court agreed should not be awarded. (See *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101 [trial court abused its discretion where reviewing court was "unable to ascertain a reasonable basis for the trial court's reduction of the lodestar amount"].) Nor does not it appear to reflect the trial court's clearly expressed concerns about the sanctions or sanctionable conduct that punctuated this litigation, even at the attorney fee motion itself.

Accordingly, we shall reverse the attorney fee award and remand for further proceedings.[10]

### 3.    *Consideration of Christie's Finances*

Defendants argue that under *Garcia v. Santana* (2009) 174 Cal.App.4th 464 (*Garcia*), the trial court could not properly impose financial ruin on Christie, which would be the result of requiring her to pay over $684,000 in attorney fees to plaintiffs. Defendants point out that the trial court had previously reduced the punitive damages awards against Christie from $75,000 to $15,000 on account of what the court characterized as Christie's "negative net income and limited net worth."

*Garcia* stands for the principle that a losing plaintiff's financial circumstances are relevant to the determination of a fee award in statutory

---

[10] In light of our reversal of the fee order, we need not address defendants' argument that the trial court improperly considered evidence presented for the first time in plaintiffs' reply brief. In any event, the argument lacks merit.

11

fee shifting cases. *Garcia* was just such a case. (*Garcia, supra*, 174 Cal.App.4th at p. 469.) The trial court awarded no fees against the plaintiff, who was indigent and became self-represented during the litigation and defendants appealed. (*Id.* at p. 467.) The Court of Appeal held that the trial court must consider the plaintiff's financial condition in a case where statutory fees were at issue in light of the principle that "financial disabilities should not bar access [to the courts] for litigants, nor unduly discourage them from seeking available remedies." (*Id.* at p. 476.) Defendants cite no authority and present no persuasive argument to support their view that *Garcia* applies in the circumstances here, where there is no prevailing indigent plaintiff or any issue concerning access to the courts. (See *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 371-373 [questioning the reasoning of *Garcia* as to awards of statutory attorney fees against indigent plaintiffs, and rejecting the reasoning for contractual fee awards].) Thus we are not persuaded that the trial court erred in concluding that *Garcia* did not require it to further reduce the fee award.

## DISPOSITION

The order awarding plaintiffs $684,282.30 in attorney fees as against Christie West is reversed and the matter is remanded for the trial court to exercise its discretion in determining a reasonable fee award. The parties shall bear their own costs on appeal.

_____
Miller, J.

WE CONCUR:


_____
Stewart, Acting P.J.


_____
Mayfield, J.*


A161728, *Sarkany et al. v. West et al.*

---

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.