Filed 12/21/20  Lave v. Charter Communications CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COURT OF APPEAL, FOURTH APPELLATE DISTRICT

# DIVISION ONE

# STATE OF CALIFORNIA

| | |
|---|---|
| ANTHONY LAVE,<br><br>      Plaintiff, Respondent, and Cross-Appellant<br><br>      v.<br><br>CHARTER COMMUNICATIONS, LLC,<br><br>      Defendant, Appellant, and Cross-Respondent. | D076206<br><br><br><br>(Super. Ct. No. RIC1508865) |

APPEAL from a judgment of the Superior Court of Riverside, John Vineyard, Judge.  Affirmed.

Kabat Chapman & Ozmer, Kristapor Vartanian, and C. Celeste Creswell, for Defendant, Appellant, and Cross-respondent.

Pine Tillet Pine, Norman Pine, Scott Tillet, Chaya M. Citrin; The Rager Law Firm, and Jeffrey Andrew Rager, for Plaintiff, Respondent, and Cross-appellant.

Charter Communications, LLC (Charter) appeals a judgment in favor of its former employee, Anthony Lave, following a jury trial on Lave's causes

of action arising from his claim that he was wrongfully terminated after taking sick leave, medical leave, and due to a disability. In a special verdict, the jury rejected Charter's defense that it fired Lave for a different reason and instead found that Charter wrongfully retaliated against, and ultimately terminated, Lave in violation of state law and awarded him noneconomic damages. Subsequently, the trial court awarded Lave $400,800 in attorney fees.

On appeal, Charter challenges the judgment on multiple grounds. It contends the court erred in excluding certain documents without redactions at trial and in instructing the jury; that portions of the verdict are not supported by substantial evidence; and that the jury's verdict is irreconcilably inconsistent. On cross-appeal, Lave challenges the trial court's award of attorney fees, contending the court's calculation was incorrect and it abused its discretion in determining the appropriate amount of fees to award. Finding no reversible error in either regard, we affirm both the judgment and the order.

I.

*Charter's Appeal*

FACTUAL AND PROCEDURAL BACKGROUND

"As required by the rules of appellate procedure, we state the facts in the light most favorable to the judgment." (*Orthopedic Systems, Inc. v. Schlein* (2011) 202 Cal.App.4th 529, 532, fn. 1.) Additional facts will be discussed where relevant in the following section.

In 2008, Charter hired Lave as a "broadband tech." Approximately two years after he was hired, Lave injured his back while working. He filed a workers' compensation claim and, although he continued to work, Lave ultimately received a permanent disability rating of 30 percent.

Years later, in September 2014, Lave asked for time off, claiming he needed to take his wife to a medical appointment. Lave's supervisor, Eugene Bereal, failed to respond for over a week. Frustrated with the lack of a response, Lave complained to a human resources employee but eventually abandoned his request for time off. Lave testified he was devastated that he could not be with his wife for the appointment.

Shortly thereafter, Lave requested another day off—again to accompany his wife to a follow-up medical appointment—and, again, Bereal ignored the request for several days. Lave raised the issue of his request for leave with the same human resources employee he had previously consulted, and Bereal finally granted Lave's request the evening before the appointment.

Lave claimed that his relationship with Bereal worsened after Lave bypassed Bereal and went to human resources regarding his leave requests. Lave testified that Bereal would "stare[] [him] down," disciplined him for minor infractions, and continued to delay his responses to Lave's leave requests.

Shortly thereafter, Lave's preexisting back injury "flare[d] up" in early January, leading him to take one day of sick leave on January 5, 2015. When Lave returned, Bereal told Lave he was going to issue a "milestone" to Lave for taking a sick day off. As described by Lave, a "milestone" was the documentation Charter used to memorialize employee discipline. Any milestones in Lave's personnel file would adversely affect his ability to receive pay increases or promotions.

Believing he was being unfairly disciplined for taking sick leave to which he was entitled, Lave complained to another human resources employee and then, days later, filed a formal complaint against Bereal. He

3

was eventually told that the local human resources department would "handle the situation."

Lave's back pain increased, leading him to reopen his workers' compensation claim and visit a medical clinic run by Charter. He was diagnosed with lower back pain and prescribed pain medication. Lave then filed a claim for medical leave and did not work from January 9 through January 22. Lave testified that he was also feeling "[a] lot of stress" at this time based on his belief that Bereal was retaliating against him.

When Bereal received an e-mail informing him that Lave was taking medical leave, Bereal replied with a one-word response: " 'Wow.' " When he received a follow-up e-mail stating that Charter's own clinical physician had placed Lave on medical leave in January, Bereal remarked that he was " 'speechless' " and added the acronym "SMH," which he explained meant "[s]haking my head."

Lave returned to work on January 25, but was suspended less than a month later on February 10. Lave was told that he was being suspended based on a customer complaint that he used profanity inside the customer's house and used his work phone to receive personal calls while working. At trial, Lave denied ever using profanity in a customer's home and, after seeing a photograph of the complaining customer, denied ever working in her home. Bereal testified that the customer complaint regarding Lave was "totally foreign" to Lave's general demeanor, but he nonetheless believed the customer complaint was accurate. Although he was "no where [*sic*] part of the investigation" regarding the customer complaint, Bereal testified that he believed the customer's account based on what he "read and interactions that [Lave] had in the past with coworkers." Bereal testified about a prior

4

incident in May 2014 when Lave was disciplined with a warning for using profanity with a coworker.

Lave filed another complaint with human resources, claiming his suspension was in retaliation for taking time off work. Lave never received a response to his complaint and was terminated on February 17.

Lave claimed his firing caused him to feel stressed and angry, and caused sleep problems. He was able to find a new job within about three months of his termination.

Following his termination, Lave filed this lawsuit against Charter, alleging he was retaliated against based on his disability related to his back injury; for taking time off to accompany his wife to her medical appointment; for taking sick leave; for taking medical leave; and for filing complaints arising from his disability accommodation and leave requests. His operative complaint alleged 13 causes of action, but several causes of action were dismissed following Charter's motion for summary adjudication. The court's order on the summary adjudication motion also dismissed Lave's prayer for punitive damages.

The case proceeded to jury trial on Lave's causes of action for (1) retaliation in violation of the California Family Rights Act (Gov. Code, § 12945.2 et seq., CFRA); (2) retaliation in violation of Labor Code sections 233 et seq.; (3) retaliation in violation of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq., FEHA); (4) failure to make reasonable accommodation in violation of FEHA; (5) wrongful termination in violation of FEHA; (6) wrongful termination in violation of public policy; (7) failure to remedy or prevent discrimination and retaliation; and (8) intentional infliction of emotional distress.

The jury found in favor of Lave on six of his causes of action and in favor of Charter on two of the causes of action.[1]  In its special verdict on Lave's second cause of action for retaliation in violation of the CFRA, the jury found that Lave's taking of *medical* leave in January 2015 was a substantial motivating reason for the decision to discharge Lave.  On his third cause of action for violation of Labor Code section 233 et seq., the jury found that Charter retaliated against Lave for taking *sick* leave or complaining about retaliation for taking sick leave when it discharged him.  On his eighth cause of action for disability discrimination, the jury found that Lave's physical condition was a substantial motivating reason for Charter's decision to terminate Lave.  On his ninth cause of action for wrongful termination in violation of public policy, the jury concluded that Lave's complaint of retaliation for taking sick leave was a substantial motivating reason for his discharge.  On his eleventh cause of action for failure to prevent discrimination and retaliation, the jury found Charter failed to take all reasonable steps to prevent discrimination and retaliation.  Finally, the jury found in favor of Lave on his thirteenth cause of action for intentional infliction of emotional distress.  The jury found all these actions were a substantial factor in causing harm to Lave and awarded him $575,000 in past noneconomic damages.

The trial court denied Charter's motions for judgment notwithstanding the verdict and motion for new trial.  It granted Lave's postjudgment motion for attorney fees, awarding $400,800 rather than the requested amount of $1,064,062.70.

---

[1]  The jury found that Charter did not retaliate in violation of FEHA by discharging Lave for requesting a disability accommodation and that even though it failed to provide a reasonable accommodation for his disability, that failure was not a substantial factor in causing harm to Lave.

6

Charter timely appealed from the judgment and the court's postjudgment orders.  Lave cross-appealed from the order denying in part his request for attorney fees.

DISCUSSION

Charter challenges the judgment on multiple grounds.  Its chief defense at trial was that it terminated Lave based on a customer complaint, not because of his leave requests and disability.  Charter's first argument on appeal centers on the trial court's orders excluding certain evidence regarding the customer complaint, which Charter contends precluded it from establishing its valid reason for terminating Lave.  We conclude the court did not err in excluding Charter's evidence on the basis that Charter failed to produce the documents in discovery.  Moreover, Charter's remaining claims attack certain causes of action, but do not address every cause of action on which the jury based its verdict and award of damages.  Thus, even accepting Charter's claims of error, Charter fails to undermine the jury's ultimate finding in Lave's favor and award of damages.

A.  *Exclusion of Charter's Unredacted Records at Trial*

Before trial, Lave sought in discovery all documents "evidencing and/or reflecting the reasons" for Lave's termination and any witness statements relating to any investigation leading to Lave's termination.  In response, Charter provided documents suggesting that the incident resulting in a customer complaint occurred on January 30, 2015.  Relying on this incident date, Lave requested all documents relating to every employee that performed work at the customer's house on January 30, 2015, and all documents evidencing which employees provided service to the complaining customer from January to April 2015.

7

As part of its discovery response, Charter produced a customer account record for the complaining customer, later to be identified as Trial Exhibit 128. The document, however, contained multiple redactions, including the customer's name and address.

At trial, Lave's counsel suggested in his opening statement that because the records demonstrated that Lave did not work on January 30, 2015, "I think we're going to have a new date for the customer complaint." During his own testimony, Lave testified that he never used profanity in a customer's home and, after seeing a photograph of the complaining customer, denied ever working in her home.

As predicted, during cross-examination of a witness, Charter relied on Exhibit 128 to suggest that the incident with the customer occurred on December 30, 2014 rather than January 30, 2015. It also introduced Exhibit 129, a redacted customer record log showing a visit to the home of a customer (whose name was redacted) on December 30, 2014.

After Lave completed his case in chief, Charter sought to introduce two documents, which were ultimately identified as Exhibit 152A, a copy of Lave's dispatch call tracker, and Exhibit 155A, his route list for December 30, 2014.[2] Charter acknowledged these documents were not produced in discovery and claimed it found the documents only after the start of trial.

Lave objected, asserting that because the documents were responsive to his discovery requests but not produced, Charter should not be permitted to admit them as evidence at trial. The trial court sustained the objection, finding that the documents should have been produced during discovery, and

---

[2] These documents, in their unredacted form, were first introduced as Exhibits 152 and 155. Later, the court ordered them to be referred to as Exhibits 152A and 155A.

noted that the new alleged incident date contradicted all documentation Charter had produced in discovery regarding the date of the incident involving Lave. However, the trial court allowed the same documents to be admitted in a redacted form for the limited purpose of demonstrating that Lave worked on the date at issue.

Later, Charter also attempted to admit *unredacted* copies of Exhibits 128 and 129, which were produced in discovery but only with heavy redactions. The trial court again sustained Lave's objection to the introduction of these documents in an unredacted form on the basis that they were not produced in that form before trial.

Charter now contends the trial court abused its discretion in sustaining Lave's objections to the admission of these four unredacted documents. It contends the exclusion of these documents without redactions resulted in a denial of its due process right to a fair trial. It also relies upon a federal law, the Cable Privacy Act (47 U.S.C. § 551 et seq.), which it asserts required the redaction of the customer's identifying information. (See *id.*, § 551, subd. (c)(1).) While acknowledging these documents were either not produced in discovery or only produced in a redacted form that hid material information, Charter contends that Lave could not have been surprised at trial with this new evidence because he already knew the customer's name and that he was present at her house on December 30, 2014.

A trial court may impose an evidentiary sanction precluding a party from introducing documents as evidence when those documents were responsive to a discovery request by the opposing party but were not disclosed and the issue arises for the first time at trial despite assurances that all responsive documents had been produced. (*Pate v. Channel Lumber Co.* (1997) 51 Cal.App.4th 1447, 1454-1455 (*Pate*).) The trial court has broad

9

discretion in deciding whether to grant or deny discovery sanctions, and its decision is subject to reversal on appeal only if there is no reasonable basis for the decision.  (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.)

Although Charter acknowledges this general rule, it relies on *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659 (*Kelly*) to support its contention that the court erred in excluding these documents despite its failure to produce them in discovery.  In *Kelly*, plaintiffs were injured when they fell out of an elevator in a building owned and operated by defendant due to an uneven exit.  (*Id*. at p. 664.)  At a deposition, one of the two plaintiffs testified they were riding in the " 'small' " elevator, not the "large" elevator.  (*Id*. at p. 665.)  However, the parties subsequently discovered new evidence demonstrating that it was the "large" elevator that was uneven on the date of the incident.  (*Ibid*.)

At trial, plaintiff acknowledged she was mistaken at her deposition and intended to testify that she now knew she was riding in the large elevator.  (*Kelly*, *supra*, 49 Cal.App.4th at p. 666.)  The trial court granted defendant's motion in limine to preclude plaintiffs or their expert from testifying they were riding in the large elevator because it would contradict the deposition testimony before trial.  (*Id*. at p. 667.)  Because plaintiffs were barred from introducing any evidence regarding the true location of their injury, the trial court found plaintiffs could not establish their claim and granted a nonsuit.  (*Id*. at p. 669.)

The Court of Appeal reversed, holding that a trial court "abuses its discretion when it precludes a party from trying a case on a theory consistent with existing evidence, even though the pretrial testimony of the party relating to how the accident occurred is contrary to the theory."  (*Kelly*, *supra*,

10

49 Cal.App.4th at pp. 672-673.) The court further held that the exclusion of all evidence completely prevented plaintiffs from offering any evidence to establish their case, "meaning the error is reversible per se." (*Id*. at p. 677.)

The situation presented in *Kelly*, where the trial court's ruling completely precluded plaintiffs from introducing any evidence at trial, is distinguishable from the present situation. Although the trial court precluded Charter from introducing some evidence at trial, the exclusion did not completely prevent Charter from establishing its defense. Charter was still able to elicit testimony establishing its claim that Lave was the employee that was the subject of the customer's complaint in December 2014. Most critically, Charter called the customer to testify at trial. The customer unequivocally testified that a Charter technician visited her house at the "end of December" 2014 and that she later called to complain that the technician used profanity in front of her family, made personal phone calls, and otherwise acted unprofessionally. At trial, the customer directly identified Lave as the technician.

Additionally, Charter's human resources employee testified that she spoke with the complaining customer on the telephone regarding the incident with Lave. She testified the customer identified the technician's name as "Anthony." She further testified that other Charter employees had confirmed that Lave was present at the customer's house on the December 2014 date of service.

Another Charter employee testified that he reviewed a report indicating that Lave was the employee who was present at the complaining customer's residence on the date of the incident. Another employee testified that he personally confirmed that Charter's records showed that Lave was the technician present at the complaining customer's residence.

11

Unlike the plaintiffs in *Kelly*, Charter was able to fully present its case. Although the court excluded certain discrete documents, Charter was able to introduce ample evidence to support its claim that Lave was present at the customer's house in December 2014. Charter's due process claim premised on the application of *Kelly* therefore has no merit. (See *Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1432 (*Tudor*) [rejecting claim of error where trial court's evidentiary "rulings simply precluded certain arguments or discrete items of evidence," but "none of the challenged rulings . . . foreclosed [the plaintiff's] essential theory of liability"].)

Based on the record before us, we conclude that the trial court did not abuse its discretion in excluding the unproduced documents in their unredacted form at trial. Before trial, Lave requested all documents relating to the customer complaint, including documents establishing that Lave visited the complaining customer, yet Charter did not produce the documents at issue. It was only after Lave had rested at trial that Charter attempted to introduce these documents. Given the "late date on which the issue arose," the trial court did not abuse its discretion in making an implied finding that "no other sanction—i.e., monetary, continuance, etc.—would have served any useful purpose." (*Pate*, *supra*, 51 Cal.App.4th at p. 1454.) Charter contends the trial court never concluded it abused the discovery process, and it had a right to withhold the documents based on the Cable Privacy Act. But the trial court has the inherent authority to control the admission of evidence in order to guarantee a fair trial. (*Peat, Marwick, Mitchell & Co. v. Superior Court* (1988) 200 Cal.App.3d 272, 288 ["The court's inherent power to curb abuses and promote fair process extends to the preclusion of evidence. Even without such abuses the trial court enjoys 'broad authority of the judge over the admission and exclusion of evidence.' "].) The Cable Privacy Act generally

12

prohibits cable operators from disclosing personally identifiable information concerning subscribers (47 U.S.C. § 551(c)(1)), but the act also allows for disclosure of that information when made pursuant to a court order and the service provider notifies the subscriber. (*Id.*, § 551(c)(2)(B).) Charter offers no valid reason why these procedures could not have been followed if it intended to use this evidence at trial. Under these circumstances, the trial court did not abuse its discretion by prohibiting the use at trial of evidence which was readily available and clearly relevant to the incident in question, but was not provided in discovery. (See *Tudor*, *supra*, 65 Cal.App.4th at p. 1431 [the test for abuse of the trial court's discretion in ruling on the admissibility of evidence is whether the court " ' "exceeded the bounds of reason" ' "].)

Even assuming the trial court abused its discretion, Charter fails to show it was prejudiced by the exclusion of these documents at trial. As discussed *ante*, the evidence was merely cumulative of other, more direct evidence. Charter introduced testimony from numerous witnesses, including the complaining customer herself and the employees responsible for creating the documents at issue, establishing that Lave was the subject of the customer's complaint. It is unlikely that the additional documents—difficult-to-decipher logs maintained by Charter—would have persuaded the jury that Lave was the employee in question if the jury did not believe the direct testimony of the customer or the Charter employees that created and

13

maintained those same logs.[3]  Thus, even assuming error, Charter has not met its burden on appeal to show a more favorable result would have been reached if the court had allowed the four unredacted documents to be admitted as evidence.  (*Tudor, supra*, 65 Cal.App.4th at pp. 1431-1432; see also *Agosto v. Bd. of Trustees of Grossmont-Cuyamaca Community College Dist.* (2010) 189 Cal.App.4th 330, 346 [trial court's purported evidentiary error did not provide a basis for reversal where appellant did not meet burden of showing a more favorable result would have been achieved "or that a miscarriage of justice occurred because of [the evidence's] exclusion"].)

B.  *Charter's Remaining Claims*

Charter raises multiple other contentions on appeal directed at specific causes of action.  It contends that the trial court erred in declining to direct a verdict on Lave's third cause of action (which the parties refer to as the "kin care" claim), because Lave could not request sick leave to attend a medical

---

[3]  As Lave notes, Charter did not request a special verdict finding as to whether Charter had a legitimate reason to terminate Lave, meaning we do not know whether the jury accepted Lave's denial that he was present at the complaining customer's residence or, instead, concluded that Charter used the customer complaint as a pretext to terminate Lave.  Lave presented evidence at trial, including expert opinion testimony, suggesting that his termination—based on a customer complaint after a cursory investigation with no prior history of complaints regarding his demeanor—was unusual and likely pretextual.  The jury could have concluded that Lave was the subject of the customer complaint, but that this was not a substantial motivating factor for Charter's decision to terminate him.

appointment with his " 'wife' " because they were not married at the time.[4] Charter also argues that the evidence was insufficient to support the jury's finding that Lave was disabled, undermining his eighth cause of action related to disability discrimination. It attacks the causes of action premised on retaliation for taking sick leave by arguing the court improperly instructed the jury to presume retaliation given the timing of Lave's complaint and his subsequent termination. It also contends the evidence does not support the jury's finding on the thirteenth cause of action for intentional infliction of emotional distress. Charter contends that if we agree with its contentions, considered singularly or cumulatively, this court must reverse the entire judgment.

Charter's arguments on appeal, however, challenge the jury's verdicts as to all causes of action *except* the jury's finding in favor of Lave on his second cause of action, in which the jury found that Charter terminated Lave for taking *medical* leave. To overcome this obstacle, Charter suggests this court should reject Lave's argument that his claims regarding *medical* leave are distinct from his separate claims regarding *sick* leave. Charter argues that if we instead accept that sick leave and medical leave are indistinguishable, the jury's verdict was inconsistent, requiring reversal of the entire judgment.

Charter asserts that this court should reject any distinction between the types of leave underlying the jury's verdict because it would be

_____

4     At trial, Lave first claimed he married his wife in 2013. When confronted with a copy of his marriage certificate showing otherwise, he admitted he did not marry his wife until October 2014—*after* his request for time off to accompany her to the medical appointments. In a footnote in his respondent's brief, Lave apparently concedes he does not have a valid claim on his third cause of action.

unreasonable to presume that "the jury (a) painstakingly parsed [Lave's] January 2015 leave into sick leave and medical leave based on their precise legal definitions; and (b) applied the definitional nuances to determine Charter fired him in retaliation for his January 8 medical leave (about which he never complained) but not his January 5 sick leave (the only leave mentioned in his Ethics Point complaint)." Charter further contends that because the jury was not specifically instructed regarding the distinction between sick and medical leave, it was impossible for the jury to draw such a distinction.

We reject Charter's claim that Lave's claims regarding sick leave and medical leave, and the jury's related findings, are indistinguishable. Although Charter correctly notes that the jury instructions did not specifically define sick leave and medical leave, Charter has not demonstrated that the lack of definitions constitutes reversible error. The parties consistently distinguished between the two terms and it was undisputed at trial that Lave took both sick leave and medical leave. Lave presented evidence at trial that he took *sick* leave on January 5, 2015. After taking one day of sick leave, Lave took *medical* leave from January 11 to 22, 2015. Charter's human resources employee testified that Lave took both sick leave and medical leave in January 2015. This distinction between types of leave was also plainly recognized by counsel at trial. During closing argument, Lave's counsel distinguished between the two terms, repeatedly suggesting that Lave's use of both types of leave was proper and undisputed. Reviewing the verdict form during closing argument, Lave's counsel told the jury that "obviously he was eligible for medical leave because it was classified as medical leave on his time sheet. He took medical leave. Should be

16

undisputed."[5]  Turning to the claims premised on sick leave, Lave's counsel again told the jury that "[w]e all know he took sick leave on January 5; that's undisputed."

In response, Charter's counsel did not counter the assertion that it was undisputed that Lave took both sick leave and medical leave.  Charter's counsel likewise consistently distinguished between medical leave and sick leave during closing argument.  When reviewing the special verdict form with the jury, Charter's counsel did not argue the jury should find that Lave did not take medical leave or sick leave, but rather argued the jury should simply find that Charter did not decide to terminate Lave for taking such leave, regardless of whether it was medical leave or sick leave.

Considered altogether, the record reveals that the parties consistently distinguished between Lave's sick leave and medical leave.  As a result, the jury could reasonably recognize the undisputed distinction between the types of leave to reasonably find that a substantial motivating factor in Charter's decision to terminate Lave was his use of medical leave but not his sick leave.  This distinction demonstrates the jury's verdict is not inconsistent.  Among the causes of action presented to the jury, the jury found that on Lave's third and ninth causes of action, Lave was not terminated for taking sick leave, but rather that he was terminated for complaining about retaliation for taking sick leave.  The jury also found in Lave's favor on his second cause of action, finding that he took medical leave and this taking of leave was a substantial motivating reason for Charter's decision to discharge Lave, which in turn was

---

[5]  Additionally, when discussing the claim regarding medical leave during closing argument, Lave's counsel did not rely on the presumption of retaliation that purportedly applies to Lave's *sick* leave claim, but instead detailed the circumstantial evidence he believed proved that Charter retaliated against Lave for taking medical leave.

a substantial factor in causing him harm. In other words, the jury found Charter did not terminate Lave for taking a single day of sick leave, but did terminate him for taking an extended medical leave thereafter.

Accordingly, we reject Charter's argument on appeal that the two types of leave are indistinguishable. As a result, Charter's arguments on appeal do not challenge the jury's finding on Lave's second cause of action, which was premised on his claim that he was retaliated against for taking *medical* leave. Critically to the outcome of this appeal, the jury's finding in favor of Lave on his second cause of action for retaliation in violation of the CFRA is sufficient, standing alone, to support the award of damages even if the jury's verdicts on the other causes of action were erroneous. "Where a special verdict was rendered on two causes of action and sufficient evidence exists to sustain it on the issue unaffected by error, it should not matter that the evidence was insufficient to sustain a verdict in favor of the successful party on the other cause of action or that reversible errors were committed regarding that other cause of action. '[T]he special verdict rendered is indistinguishable from a general verdict in which a jury finds in favor of a party on more than one cause of action.' " (*Roberts v. Ford Aerospace & Communications Corp.*(1990) 224 Cal.App.3d 793, 799, quoting *Mouchette v. Bd. of Education* (1990) 217 Cal.App.3d 303, 315.)

When a jury's verdict awards damages but does not distinguish among the various theories of liability, an appellate court's conclusion that one cause of action is supported by substantial evidence renders the remaining contentions of an appellant moot because "nothing we would do with respect to those counts would have any effect on the amount of the judgment awarded by what, in essence, was a general verdict when there is no reason

18

to believe the jury apportioned the damages." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 368.)

As the appellant, Charter bears the burden of overcoming the presumption of correctness on appeal. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).) In light of our conclusion that the jury's verdict distinguishing between medical leave and sick leave was not inconsistent, the jury's finding in Lave's favor on his second cause of action is not undermined even if we were to accept all of Charter's other challenges to the judgment on appeal. By failing to make any challenge to the jury's finding in favor of Lave on his second cause of action, which by itself can support the award of damages, Charter fails to establish a basis for reversal of the judgment.

II

*Lave's Cross-appeal*

In a cross-appeal, Lave challenges the court's calculation of attorney fees awarded after entry of judgment. He contends the order must be reversed because the court made a mathematical error in calculating the lodestar amount of fees and failed to properly consider the relevant factors in determining whether to apply an enhancement to the lodestar amount in its award of fees. We disagree.

FACTUAL AND PROCEDURAL BACKGROUND

Following the jury's verdict in his favor, Lave moved for an award of attorney fees pursuant to Government Code section 12965, subdivision (b). In his motion, Lave requested an award in the total amount of $1,064,062.70, consisting of a "lodestar" fee amount of $532,031.35 and an enhancement to double the total award. In support of the motion, Lave submitted declarations from two of his attorneys detailing their billing records and

19

explaining why the circumstances of this case warranted the application of an enhancement to the lodestar to increase the total award.

In a tentative ruling, the trial court found the claimed hourly rate for Lave's counsel to be inflated for the region and instead found a reasonable hourly rate to be $300 per hour for associates and $450 per hour for partners. The court reduced the claimed billable hours by 1.2 hours for one of the attorneys and excised an entry for the cost of parking found in the billable hour records for another attorney. The court also declined to apply a lodestar enhancement, finding that Lave did not meet his burden to warrant an enhancement. In so finding, the court quoted case law holding that such an enhancement is warranted only when the prevailing party receives " 'exceptional representation.' " Based on these findings, the tentative ruling was to grant the motion and award a total of $400,800.

At the hearing on the motion, Lave's counsel indicated that he wished to reserve his right to respond to the arguments by Charter but that he would "stipulate to the tentative." Following argument by Charter's counsel, Lave's counsel made no other argument or objection. The court affirmed the tentative ruling and awarded a total of $400,800. Lave filed a cross-appeal from that postjudgment order.

## DISCUSSION

Lave argues the court's fee order is premised on a mathematical error and that the court's ruling on his request for a lodestar enhancement erroneously ignored the relevant factors that must be considered by the trial court when considering whether to apply a lodestar enhancement. Lave acknowledges that we review the trial court's ruling under the abuse of discretion standard of review. (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488 (*Laffitte*).)

In challenging the trial court's calculation of an award of reasonable fees, Lave does not establish the amount itself is inherently unreasonable or the result of any abuse of discretion.  If the trial court simply stated it found a total award of $400,800 to be reasonable without any accompanying explanation of its mathematical calculation, such an award would clearly be within the trial court's discretion.  (See, e.g., *Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1189 (*SOURCE*) [trial court is not required to support an award of attorney fees with a precise explanation of its mathematical calculation].)

Instead, Lave relies on what he claims is a mathematical error in the trial court's calculation of the lodestar amount to suggest it is possible the trial court erred.  However, because Lave did not raise this issue in the trial court, the court had no opportunity to explain its reasoning or to correct any possible error.  " 'An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below.' [Citation.]  It is unfair to the trial judge and to the adverse party to take advantage of an alleged error on appeal where it could easily have been corrected at trial." (*Children's Hospital and Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 776.)  " 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.' " (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826; see also *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1.)  By failing to raise an issue he believed was obvious on the face of the trial court's tentative ruling, Lave has forfeited his challenge to the calculation of the fee award and cannot raise it for the first time on appeal.

21

Thus, even assuming he did not acquiesce in the order by stipulating to the tentative (cf. *Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1406), Lave cannot challenge the trial court's calculation on appeal.

Lave also contends the court's ruling on his request for a lodestar enhancement erroneously ignored the relevant factors that must be considered by the trial court in a ruling on whether to apply a lodestar enhancement. Lave also did not raise this issue in the trial court and, accordingly, has forfeited the assertion. Even if we were to consider the merits of his challenge, we see no basis for reversal.

Lave's challenge to the trial court's ruling disregards the "fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson*, *supra*, 5 Cal.5th at pp. 608-609.) Following this principle, "[a]ll intendments and presumptions are made to support the judgment on matters as to which the record is silent" and "[w]e presume the trial court followed applicable law." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).) In the context of an attorney fee award, "[f]ees approved by the trial court are presumed to be reasonable, and the objectors must show error in the award." (*Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 556.)

Lave primarily argues that the trial court's tentative ruling neglected to discuss several factors that would support the application of a lodestar enhancement, including the risk to Lave's counsel for taking the case on contingency and counsel's preclusion from other work due to taking on Lave's

case.[6]  In essence, Lave asks this court to presume that the trial court failed to consider these factors because it did not discuss them in its written ruling.

Such a presumption violates the principles of appellate review.  Instead of presuming error, we presume the trial court followed the applicable law. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956.)  Under the abuse of discretion standard of review, the appellant bears the burden of affirmatively showing the court failed to properly apply the law.  (*Safeco Ins. Co. of America v. Superior Court* (2009) 173 Cal.App.4th 814, 832-833; *Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158.)  As noted *ante*, a trial court is not required to issue a statement of decision in regard to an attorney fee award and, accordingly, has no duty to explain every possible basis for its decision with specific findings.  (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140 (*Ketchum*).)  Absent affirmative evidence to the contrary, we presume the court considered and rejected the factors in favor of applying an enhancement to the lodestar amount.  Lave presents no such affirmative evidence.  Thus, "we cannot reverse an attorney fee award solely for lack of an explanation by the trial court."  (*SOURCE*, *supra*, 235 Cal.App.4th at pp. 1189-1190.)

Moreover, as Lave recognizes, the trial court's decision with respect to whether to apply a lodestar enhancement is entitled to deference.  (*In re Vitamin Cases* (2003) 110 Cal.App.4th 1041, 1051-1052.)  " 'The only proper basis of reversal of the amount of an attorney fees award is if the amount

_____

[6]  The trial court " 'may increase or decrease [the lodestar] amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.' "  (*Laffitte*, *supra*, 1 Cal.5th at p. 489.)  "[A]pplication of a lodestar multiplier is *discretionary*; that is, it is based on the exercise of the court's discretion after consideration of the relevant factors in a particular case." (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1240.)

awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination.' " (*In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 587.)

Lave does not demonstrate that the trial court's award of fees is so low that the award shocks the conscience. Simply showing the possible presence of factors supporting the application of a multiplier does not require the trial court to apply a fee enhancement. "Of course, the trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case. . . ." (*Ketchum*, *supra*, 24 Cal.4th at p. 1138.) Although Lave points to several factors that he believes warrant a larger award, the presence of these factors alone does not suggest the trial court's ruling declining to apply a multiplier was influenced by passion and prejudice. Ultimately, the trial court was in the best position to evaluate the professional services rendered in this case (*id*. at p. 1132), and Lave has failed to establish the trial court abused its discretion under the applicable standard of review here. (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 385 ["The court did not abuse its discretion in denying plaintiffs' request to enhance the lodestar."]; *Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 741 ["Nothing in the record convinces us the trial court's decision to deny a multiplier was ' "clearly wrong." ' "].)

DISPOSITION

The judgment and postjudgment order awarding attorney fees are affirmed. The parties shall bear their own costs on appeal.


GUERRERO, J.

WE CONCUR:



BENKE, Acting P. J.



HALLER, J.

25