Filed 5/25/23  Geiser v. Kuhns CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GREGORY GEISER,<br><br>    Plaintiff, Appellant, and Cross-Respondent,<br><br>    v.<br><br>PETER KUHNS et al.,<br><br>    Defendants, Respondents, and Cross-Appellants. | B279738<br><br>(Los Angeles County Super. Ct. Nos. BS161018, BS161019, BS161020)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on May 8, 2023, is modified as follows:

On page 3, in the last sentence of the Introduction, "their civil harassment petitions" is replaced with "plaintiff's civil harassment petitions".

On page 19, "The parties are to bear their own costs on appeal" is replace with "Defendants are awarded their costs on appeal."

There is no change in the judgment.

_____

BAKER, Acting P. J.          MOOR, J.          KIM, J.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GREGORY GEISER, <br><br> Plaintiff, Appellant, and Cross-Respondent, <br><br> v. <br><br> PETER KUHNS et al., <br><br> Defendants, Respondents, and Cross-Appellants. | B279738 <br><br> (Los Angeles County Super. Ct. Nos. BS161018, BS161019, BS161020) |

APPEAL from orders of the Superior Court of Los Angeles County, Armen Tamzarian, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Beach Cities Law Group, Frank Sandelmann and Joshua A. Valene, for Plaintiff, Appellant, and Cross-Respondent.

Law Office of Matthew Strugar, Matthew Strugar; Law Office of Colleen Flynn, Colleen Flynn, for Defendants, Respondents, and Cross-Appellants.

# INTRODUCTION

Plaintiff Gregory Geiser filed petitions for civil harassment restraining orders against defendants Peter Kuhns and spouses Mercedes and Pablo Caamal, after defendants demonstrated at plaintiff's place of business and in front of his residence in an attempt to prevent the Caamals' eviction from their home. In response, defendants moved to strike the civil harassment petitions as strategic lawsuits against public participation (anti-SLAPP motions). After plaintiff voluntarily dismissed his civil harassment petitions, the trial court awarded defendants attorney fees as the prevailing parties on the petitions. The trial court denied defendants' attorney fees on their anti-SLAPP motions, ruling they would not have prevailed on the motions.

Plaintiff appeals the trial court's determination that defendants were the prevailing parties on the civil harassment petitions and, alternatively, the calculation of the attorney fees award. Defendants appeal the trial court's determination that they would not have prevailed on their anti-SLAPP motions.

On August 30, 2018, the panel majority affirmed the trial court's orders.[1] On November 14, 2018, the California Supreme Court granted defendants' petition for review. On September 11, 2019, the Supreme Court transferred the matter back to us with directions to reconsider the matter in light of its decision in *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133

---

[1] Justice Baker dissented from the panel majority's anti-SLAPP holding.

(*FilmOn.com*) which interpreted the "catchall provision" of the anti-SLAPP statute (Code Civ. Proc., § 425.16, subd. (e)(4)[2]).

On February 28, 2020, having considered *FilmOn.com*'s application to this matter, the panel majority again affirmed the trial court's orders.[3] On July 22, 2020, the Supreme Court granted defendants' petition for review. On August 29, 2022, the Supreme Court held that the panel majority "erred in holding that the demonstration outside [plaintiff's] home did not constitute speech in connection with a public issue under the anti-SLAPP statute's catchall provision" and remanded for further proceedings consistent with its opinion. (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1256 (*Geiser*).) Having considered the matter in light of the Supreme Court's opinion, we affirm the trial court's order awarding defendants' attorney fees on their civil harassment petitions, reverse the court's order denying defendants their attorney fees under the anti-SLAPP statute, and remand the matter for further proceedings as set forth below.

## BACKGROUND

Plaintiff is the founder, President, and Chief Executive Officer of Wedgewood LLP, which is in the business of purchasing, rehabilitating, and selling distressed properties. On September 23, 2015, through a non-judicial foreclosure sale, a

---

[2] All statutory citations are to the Code of Civil Procedure, unless otherwise stated.

[3] Justice Baker again dissented from the panel majority's anti-SLAPP holding.

Wedgewood subsidiary purchased from Wells Fargo a triplex Ms. Caamal owned (the property) for $284,000. Wedgewood then obtained an eviction judgment for one of the units.

According to Ms. Caamal, on December 17, 2015, she and her husband, along with a group of concerned citizens, went to Wedgewood's office building and requested a meeting with plaintiff to attempt to prevent their eviction and to negotiate a repurchase of her home. The concerned citizens included Kuhns and persons involved with the Alliance of Californians for Community Empowerment (ACCE), an entity whose various missions include saving homes from foreclosure and fighting against displacement of long-term residents. Kuhns is the Los Angeles Director for ACCE. The group set up a tent in Wedgewood's lobby and disrupted its business.

Plaintiff was not present. Wedgewood's Chief Operating Officer Darin Puhl and its General Counsel Alan Dettelbach went to the lobby. Dettelbach attempted to move the tent and was shoved by one of the demonstrators. The police were called. No one was arrested or cited.

Puhl spoke with the Caamals and learned they were interested in repurchasing the property. He offered to meet with them in private if the demonstrators left the building. The Caamals agreed. In the meeting, the Caamals told Puhl they could afford to repurchase the property. Puhl agreed to hold off enforcement of Wedgewood's eviction judgment on the property's first unit (an unlawful detainer trial was set for January 2016 for the other two units) for several weeks so the Caamals could meet with a lender to assess whether they could qualify for a loan. Although Puhl "gave [the Caamals] an idea of the value [of the

4

property] according to similar properties in the area," they did not discuss a purchase price.

The Caamals subsequently submitted to Wedgewood a prequalification letter apparently with a purchase price of $300,000. In early January 2016, Puhl again met with the Caamals. Puhl informed them that Wedgewood believed the property was worth $400,000 according to real estate websites and $300,000 was unacceptable. Wedgewood offered to sell them the property for $375,000.

The Caamals asked for additional time to obtain a home loan, agreeing to vacate the entire property within 60 days—by March 20, 2016—if they could not obtain financing. On March 18, 2016, the Caamals sent Wedgewood a prequalification letter with a $300,000 purchase price. Wedgewood deemed the prequalification letter unacceptable because it was not for the purchase price of $375,000 and it expressly stated that it did "not constitute loan approval."

The Caamals did not vacate the property by the date agreed upon, and, on March 23, 2016, they, Kuhns, and persons involved with ACCE returned to Wedgewood's office building seeking to meet with plaintiff. Mr. Caamal allegedly stated, "'[Y]ou're not getting me out of this property alive.'" The Caamals and their supporters left the premises either because the police were called and removed them or because Puhl agreed to review the Caamals' "prequalification" documents.

Because the Caamals had not arranged to purchase the property by the date agreed upon, Wedgewood had the San Bernardino Sheriff's Department evict them on March 30, 2016. Later that night, defendants and persons involved with ACCE went to plaintiff's residence. According to defendants, the

Caamals and their supporters staged a residential picket on the sidewalk outside of plaintiff's home. They held signs, sang songs, chanted, and gave short speeches. The demonstration lasted for about an hour—from about 9:00 p.m. to 10:00 p.m. Officers from the Manhattan Beach Police Department were present, but did not order the demonstrators to disburse or intervene to stop the demonstration. No one was arrested or cited.

According to Gilbert Saucedo, a National Lawyers Guild legal observer, ACCE organized the demonstration to protest the unfair and deceptive practices Wedgewood and its agents used to purchase the property and to evict the Caamals. He estimated there were 25 to 30 demonstrators and described the demonstration as "peaceful."

Plaintiff viewed the demonstration at his home differently. Two days after the demonstration, he filed petitions for civil harassment restraining orders against defendants. In his petitions, plaintiff stated that around 9:00 p.m., a "mob" of about 30 persons arrived at his residence and chanted, "Greg Geiser, come outside! Greg Geiser, you can't hide!" Plaintiff called the police. His wife sneaked out the back door and hid at a neighbor's house.

Plaintiff further recounted the incident in his declaration in support of restraining orders as follows: "Sometime before midnight, as a result of discussions with the police and Wedgewood's lawyer, the mob disbanded. My wife and I were left shaken by the escalating campaign of harassment that has followed me from work to my home. In view of the mob actions combined with the direct verbal threats, we are in fear for our safety. We have arranged for private security to stand guard outside both our place of business and our house.

6

"I further understand from conversations Wedgewood's general counsel had with the police the night the mob assaulted my home that police require a court order to keep the mob away from my house by any meaningful distance.  This is why we are seeking this Court's assistance in issuing an order for these respondents to stay away from my wife and me, my business, and my home, by at least 100 yards."

The trial court issued temporary restraining orders.  The orders required defendants to stay at least 50 yards from plaintiff, his wife, and Wedgewood for the following three weeks.

Defendants responded to the civil harassment petitions by filing anti-SLAPP motions.  They claimed plaintiff was attempting to stifle their free speech and expressive activity.

In addition to the civil harassment petitions, plaintiff sought to prevent further demonstrations in front of his home through the Manhattan Beach City Council.  The day after the demonstration, plaintiff spoke with a city council member.  Based on that conversation, the council member proposed an ordinance to the Manhattan Beach City Council that would prohibit targeted residential picketing.

On July 5, 2016, plaintiff spoke at the Manhattan Beach City Council meeting at which the proposed ordinance was addressed.[4]  During a break in the meeting, Manhattan Beach Police Department Chief Eve Irvine approached plaintiff and assured him that what had happened at his home on March 30 would never be allowed to happen again.  She explained the police department had received additional training about how to

---

[4]     On August 17, 2017, the City Council tabled a motion to approve the ordinance.

enforce the city's existing laws in those types of situations. If the demonstrators returned to his home, the police department would do everything in its power to make sure that his home, family, and neighbors were protected. Following that meeting, plaintiff had several phone conversations with other members of the Manhattan Beach Police Department and members of the Manhattan Beach City Council during which he was assured that if a similar demonstration happened, he could expect a "full response" from the police department.

On August 4, 2016, plaintiff dismissed without prejudice the three civil harassment petitions.[5] He dismissed the petitions because, based on his July 5, 2016, conversation with Chief Irvine, he "felt reassured" the police department would respond appropriately if the demonstrators returned. Also, it had become clear to plaintiff from ongoing settlement negotiations with the Caamals that they were not going to repurchase the property and he believed it would be easier to list and sell the property without pending litigation.

When plaintiff dismissed the civil harassment petitions, the trial court had not ruled on defendants' anti-SLAPP motions. Defendants moved for an award of $84,150 in attorney fees (a $56,100 lodestar with a 1.5 multiplier) and $370 in court costs as the prevailing parties under the mandatory attorney fees provision of the anti-SLAPP statute (§ 425.16, subd. (c)(1)) and,

---

[5] Plaintiff and Wedgewood had also filed a civil action against defendants and ACCE relating to essentially the same conduct giving rise to the civil harassment petitions (case number BC615987). We grant plaintiff's request to take judicial notice of plaintiff's dismissal of that action on July 14, 2016, and otherwise deny his request for judicial notice.

alternatively, as the prevailing parties under the discretionary attorney fees provision of the civil harassment statute (§ 527.6, subd. (s)) (attorney fees motion).[6] The trial court ruled that defendants would not have prevailed on the anti-SLAPP motions, but found they were the prevailing parties on the civil harassment petitions. The trial court thus awarded defendants $40,000 in attorney fees and court costs. In declining to award the full amount sought by defendants, the trial court found that the hourly rates defendants' attorneys requested were high in light of their experience and the nature and difficulty of the litigation. The trial court also found that large parts of the requested attorney fees related to unsuccessful settlement negotiations and the anti-SLAPP motion, which the trial court concluded would not have succeeded.

## DISCUSSION

### I.     Plaintiff's Appeal

Plaintiff appeals the award of attorney fees and costs, claiming the trial court erred by: (1) excluding evidence that was crucial to determine that plaintiff was the prevailing party on the civil harassment petitions; (2) ultimately concluding that defendants were prevailing parties; and (3) miscalculating the amount of fees.

---

[6]     Defendants did not separately request attorney fees for work performed on the anti-SLAPP motion and for work performed on the civil harassment petition. Instead, they sought an award of attorney fees for all work performed in the litigation.

9

A.      *"Exclusion" of Evidence*

Plaintiff contends the trial court erred when it excluded as hearsay his declaration testimony that Chief Irvine assured him the police department would protect him and his family in the event of further demonstrations at his home.  The ruling was error, plaintiff argues, because the testimony was offered to show that plaintiff acted in reliance on that assurance when he dismissed his civil harassment petitions, and not for the truth of the matter asserted—i.e., that the police would protect him.  Plaintiff contends the error was prejudicial because it was crucial to the trial court's prevailing party determination.  The trial court did not err.

We review a trial court's rulings on evidentiary objections for an abuse of discretion.  (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)  "Discretion is abused only when in its exercise, the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.'"  (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281 (*Shaw*).)  An appellant bears the burden of establishing an abuse of discretion when challenging a trial court's discretionary rulings.  (*Ibid.*)

In the declaration he submitted in opposition to defendants' attorney fees motion, plaintiff stated that Chief Irvine, other members of the Manhattan Beach Police Department, and members of the Manhattan Beach City Council assured him the police department would protect him if the demonstrators returned to his home.  Defendants objected to those parts of plaintiff's declaration as hearsay.

The trial court ruled, "[Plaintiff] claims he obtained the relief he sought *outside of court* after he received an assurance

10

from Manhattan Beach Police Chief Eve Irvine that 'what happed at [his] home on the night of March 30 would <u>never</u> be allowed to happen again.' This statement and similar alleged statements by Chief Irvine and other city officials, however, are inadmissible hearsay." In a footnote appended to the ruling, the trial court stated, "[Plaintiff] argues that the statements are admissible to show what his state of mind was when he dismissed the petitions. The court agrees. (See Evid. Code, § 1250.) But petitioner's state of mind is of marginal relevance to the issue of who was the prevailing party in this litigation and the other issues the court must decide to adjudicate [defendants'] motions."

Later, in a section addressing defendants' evidentiary objections, the trial court sustained hearsay objections to the statements made by other members of the Manhattan Beach Police Department and by Manhattan Beach City Council members. With respect to the statements attributed to Chief Irvine, the trial court sustained the hearsay objection, explaining that "Chief Irvine's statements are hearsay to the extent they are offered for the truth of the matter asserted."

Plaintiff's appeal concerns only the trial court's ruling on Chief Irvine's alleged statements. His argument that the trial court erred by excluding the statements as hearsay fails because the trial court did not exclude the statements for all purposes. The trial court's ruling is clear. It excluded the police chief's statements to the extent they were offered for the truth of the matter asserted, but admitted them to explain why plaintiff dismissed his civil harassment petitions—the very reason plaintiff argues on appeal they were admissible. Accordingly, we find no error with respect to the trial court's evidentiary ruling.

11

B.    *Prevailing Party*

Plaintiff contends the trial court abused its discretion when it determined that he was not the prevailing party under section 527.6.  He argues that he prevailed because he "obtained the object of the litigation, namely assurances from representatives of the City of Manhattan Beach that future harassment would be prevented."  We disagree.

We review a trial court's prevailing party ruling under section 527.6 for an abuse of discretion.  (*Adler v. Vaicius* (1993) 21 Cal.App.4th 1770, 1777; *Elster v. Friedman* (1989) 211 Cal.App.3d 1439, 1443 (*Elster*).)  As stated above, a trial court abuses its discretion "only when in its exercise, the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.'"  (*Shaw, supra*, 170 Cal.App.4th at p. 281.)

"'A plaintiff will be considered a prevailing party when the lawsuit '"was a catalyst motivating defendants to provide the primary relief sought'" or succeeded in '"activating defendants to modify their behavior.'"  [Citation.]'  [Citation.]"  (*Elster, supra*, 211 Cal.App.3d at pp. 1443–1444 [section 527.6 action].)  Ordinarily, when a plaintiff voluntarily dismisses an action, the defendant is the prevailing party.  (See *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94, 100, 107 [alleged SLAPP suit dismissed without prejudice].)  However, "a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise."  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 622 [contract action].)

The trial court ruled that defendants were the prevailing parties, finding that "they obtained what they wanted out of the

litigation—[plaintiff] dismissed his actions and did not get restraining orders or any other relief." It rejected plaintiff's claim that he was the prevailing party because he achieved what he sought outside of court through Police Chief Irvine's assurances that what happened at his home would not be allowed to happen again. The trial court found that plaintiff "did not obtain this alleged promise by Chief Irvine *as a result of these lawsuits*." It reasoned that plaintiff could have sought Chief Irvine's commitment without filing the civil harassment petitions. Moreover, the trial court recognized the substantial difference between what plaintiff did achieve outside of the lawsuit, i.e., "a commitment by Chief Irvine to enforce existing law—whatever that is worth," and the "gravity" of what plaintiff sought through the lawsuit, i.e., "remedies that would have limited [defendants'] liberty, namely their freedom of movement and communication," as well as "a court finding that they engaged in socially unacceptable behavior."

We agree with the trial court. The objective of plaintiff's civil harassment petitions was to obtain orders restraining defendants from, among other things, harassing or contacting him or his wife, and requiring defendants to stay 100 yards award from him, his wife, his home, and his workplace—i.e., Wedgewood. Plaintiff failed to achieve that objective, and obtaining Chief Irvine's assurances fell short of such objective.

Moreover, to the extent obtaining Chief Irvine's commitment to enforce the law can be characterized as having obtained plaintiff's objectives in bringing suit, there is no evidence that plaintiff's civil harassment petitions motivated Chief Irvine to give her assurances or even that Chief Irvine knew of the petitions. In this regard, we reject plaintiff's

13

contention the trial court impermissibly "required" a nexus between plaintiff's filing the petitions and Chief Irvine's actions. The trial court never stated such a nexus was necessary for plaintiff to be a prevailing party. Rather, the trial court's consideration of the lack of any causation between the lawsuit and Chief Irvine's assurance to plaintiff was a valid (if not dispositive) factor in the exercise of its discretion. We likewise reject plaintiff's suggestion that the absence of evidence that his civil harassment petitions were not a motivating factor for the police department means we should infer the petitions were a motivating factor. That suggestion fails to acknowledge that plaintiff bears the burden of showing the trial court's prevailing party determination exceeded the bounds of reason. (*Shaw, supra*, 170 Cal.App.4th at p. 281.)

For the foregoing reasons, we find no abuse of discretion in the trial court's determination that defendants were prevailing parties.

C.      *Attorney Fees Calculation*

Plaintiff contends the trial court erred in calculating defendants' attorney fees award on the civil harassment petitions. Plaintiff has failed to demonstrate error.

"A trial court's exercise of discretion concerning an award of attorney fees will not be reversed unless there is a manifest abuse of discretion. [Citation.] "'The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong[']—meaning that it abused its discretion.

14

[Citations.]'" [Citation.] Accordingly, there is no question our review must be highly deferential to the views of the trial court. [Citation.]" (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239 (*Nichols*).)

In their attorney fees motion, defendants requested $84,150 in attorney fees and $370 in court costs.[7] The trial court awarded a reduced amount—$40,000—finding defendants' attorneys' hourly rates were too high and a large amount of time was spent on unsuccessful settlement negotiations and the anti-SLAPP motion, which would not have succeeded.

Plaintiff contends the trial court disregarded its findings in reducing the requested attorney fees and court costs by $44,520 because time spent on the anti-SLAPP motion alone accounted for $43,230 of the initial request. Thus, plaintiff concludes, the trial court essentially reduced the attorney fees award by the amount spent on the anti-SLAPP motion with no reductions for the attorneys' unreasonably high hourly rates or fruitless settlement negotiations.

Plaintiff does not explain how he arrived at the $43,230 figure. His opening brief cites his opposition to defendants' attorney fees motion, which in turn does not explain how plaintiff arrived at the unmodified lodestar of $28,820 ($28,820 x 1.5 = $43,230) for work on the anti-SLAPP motion referenced in the

---

[7] In their reply in support of their motion, defendants increased their request for attorney fees to $100,525, the adjustment reflecting attorney time responding to plaintiff's opposition. The trial court based its attorney fees award on the $84,150 figure in defendants' attorney fees motion and not on the $100,525 figure in their reply. Defendants do not claim on appeal that the trial court erred.

15

opposition. "Counsel is obligated to refer us to the portions of the record supporting his or her contentions on appeal. [Citations.] . . . [W]e will not scour the record on our own in search of supporting evidence. [Citation.] Where, as here, respondents have failed to cite that evidence, they cannot complain when we find their arguments unpersuasive. [Citation.]" (*Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1149.) Plaintiff has failed to show the trial court abused its discretion in awarding defendants' attorney fees and court costs. (*Nichols, supra*, 155 Cal.App.4th at p. 1239.)

## II. Defendants' Cross-Appeal

Defendants contend the trial court erred in denying attorney fees related to their anti-SLAPP motions on the ground that defendants would not have prevailed on such motions. Specifically, they argue the trial court erred in finding that the anti-SLAPP statute did not apply to plaintiff's civil harassment petitions because defendants failed to establish the first step in bringing a successful motion—i.e., that defendants engaged in protected activity.

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted . . . section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048,

16

1055–1056; § 425.16, subd. (b)(1)[8].) We review an order denying an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326.)

"Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

The Supreme Court held that defendants established the anti-SLAPP statute's first step. (*Geiser, supra*, 13 Cal.5th at p. 1243.)[9] Because the trial court denied defendants' anti-SLAPP attorney fees motions based on its ruling that defendants did not establish the anti-SLAPP statute's first step, it did not reach the statute's second step. The parties agree that when an appellate court reverses a trial court's ruling that the anti-SLAPP statute

---

[8]    Section 425.16, subdivision (b)(1) provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

[9]    The Supreme Court's first step analysis and holding focused on the protests at plaintiff's home. (*Id.* at pp. 1243, 1250–1251, 1253, 1256.) By parity of reason, the court's first step analysis applies equally to the protests at Wedgewood's office building.

did not apply and the trial court did not address the anti-SLAPP statute's second step, "the more prudent course is to remand the matter to the trial court to determine in the first instance whether [the plaintiff] demonstrated a reasonable probability of prevailing on the merits of his causes of action[—i.e., to perform a second step analysis]. [Citations.]" (*Hunter v. CBS Broadcasting Inc.* (2013) 221 Cal.App.4th 1510, 1527–1528; *Bowen v. Lin* (2022) 80 Cal.App.5th 155, 163.)

Nevertheless, defendants state "there may be good reasons to depart from the typical court here." They suggest we are more familiar with the case and their motions than the trial court—the assigned trial court judge having changed—and could preserve judicial resources by deciding the second step in the first instance. Defendants cite no authority for their proposition, and we believe the better course is to remand the matter to the trial court for it to consider the anti-SLAPP statute's second step.

18

## DISPOSITION

The trial court's order awarding defendants' attorney fees under the civil harassment statute is affirmed.  The trial court's order denying attorney fees under the anti-SLAPP statute is reversed and the matter is remanded to the trial court for it to consider the anti-SLAPP statute's second step.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.

MOOR, J.

19

Gregory Geiser v. Peter Kuhns et al.
B279738


BAKER, Acting P. J., Concurring



When this case was twice before this court, I partially dissented each time, and our Supreme Court granted review each time.  Now that the case is back before us on remand from the Supreme Court, I have signed the opinion for the court.  I write separately, however, to explain why remanding this case to the trial court, while generally harmless, only appears to delay the inevitable.

Both sides in this appeal take the position that we should remand this cause to the trial court to undertake the second-step anti-SLAPP analysis that it never performed.  The opinion for the court does what the parties agree we should do.  And that seems unobjectionable: the trial court can analyze the issue in the first instance and any error can be corrected in yet another appeal, if necessary.  But the issue the trial court will be called to resolve is straightforward.

The purpose of the anti-SLAPP statute is to provide a remedy against those who use the litigation process to suppress constitutionally protected speech or petitioning activity.  The statue itself says so: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall

be subject to a special motion to strike . . . ." (Code Civ. Proc., § 425.16, subd. (b)(1).) Our Supreme Court has held, definitively, that Gregory Geiser's petitions for civil harassment restraining orders arose from conduct protected by the anti-SLAPP statute, i.e., that the petitions were filed based on acts done in furtherance of constitutionally protected speech or petitioning.[1] (*Geiser*, *supra*, at 1243; see also *id.* at 1256 [quoting the observation in *Terminiello v. City of Chicago* (1949) 337 U.S. 1, 4 that "'[s]peech is often provocative and challenging'" and holding the demonstration outside Geiser's home was speech in connection with a public issue].) That conclusion is dispositive because the civil harassment restraining order statute that Geiser invoked in filing his petitions expressly provides a restraining order may not issue based on constitutionally

---

[1] The organization and focus of the Supreme Court's opinion in this case demonstrates the Court understood Geiser's restraining order petitions arose from the sidewalk demonstration outside his house, not the earlier office protests. (See, e.g., *Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1243 ["The case before us features a sidewalk picket purporting to protest a real estate company's business practices after the company evicted two long-term residents from their home"] (*Geiser*).) That is also evident from the petitions themselves, which identify the date of the alleged harassment as the date of the sidewalk demonstration outside Geiser's house, and from Geiser's own brief filed after the most recent remand from our Supreme Court, which admits Geiser filed his restraining order petitions "based on" the understanding that "the police could not protect him from such an incident [i.e., the sidewalk protest] in the future without a court order."

2

protected conduct.[2]  (Code Civ. Proc., § 527.6, subd. (b)(1) ["Constitutionally protected activity is not included within the meaning of 'course of conduct'"]; see also Code Civ. Proc., § 527.6, subd. (b)(3) [defining harassment as unlawful violence or a credible threat of violence—neither of which are at issue in this case—or an alarming, annoying, or harassing "course of conduct"].)  So Geiser has no chance of prevailing on his restraining order petitions not only because he voluntarily dismissed them when confronted with the anti-SLAPP motions at issue, but also because the governing statute would not permit issuance of restraining orders even if he had not given up the fight.

The only practical effect I can accordingly discern from remanding this case to the trial court is that the amount of attorney fees Geiser will be required to pay to counsel for the defendants will increase.  But that is the course of action that Geiser himself advocates, so I see no reason not to do it.


BAKER, Acting P. J.

---

[2]    There may be a sliver of theoretical daylight for exploration in another case between constitutionally protected conduct and an act in furtherance of constitutionally protected conduct.  But there is no such daylight here where the sidewalk demonstration is at issue.

3